(February 10, 1912.)

## ALMA T. STEWART, Appellant, v. THE WEISER LUMBER CO., LTD., et al., Respondents.

[121 Pac. 775.]

QUIETING TITLE—HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY— COMMUNITY PROPERTY—MORTGAGE SIGNED BY HUSBAND—PROPERTY PURCHASED BY WIFE—CONSIDERATION—CONSTRUCTION OF STATUTE.

(Syllabus by the court.)

1.   Where a married woman purchases a forty-acre tract of land as and for her own separate property and pays a part of the purchase price at the time of the purchase and assumes a mortgage then existing on said land, and executes a mortgage thereon for the balance of the purchase price, which mortgage and notes are signed by the husband, *held,* under the facts, that said forty-acre tract of land is the separate property of the wife and that no part of it is community property.

2.   The provisions of sec. 2922, Rev. Stats. of 1887, which are identical with the provisions of sec. 3107, Rev. Codes, 1909, were repealed by an act approved March 9, 1903 (Sess. Laws, p. 345), and under the second section of said act, which is now sec. 2677, Rev. Codes, during the continuance of the marriage the wife has the management, control and absolute power of disposition of her separate property, without the signature of her husband, and may enter into contracts with reference to the same in the same manner and to the same extent, and with like effect, as a married man may in relation to his real and personal property.

3.   The presumption that property acquired during marriage is community property may be rebutted.

4.   *Held,* that the evidence clearly shows that the land involved in this case is the separate property of the wife.

APPEAL from the District Court of the Seventh Judicial District for Washington County.   Hon. Ed. L. Bryan, Judge.

Action to quiet title to the separate property of the wife. Judgment for defendant.   *Reversed.*

John H. Norris, and Feltham & Ryan, for Appellant.

"The presumption arising from a deed to a married woman, strengthened by the fact that the first payment was made with her separate property, and at the time of purchase, when her husband was solvent, they both declared that she was buying it for herself, with her own money, and was going to pay for it, is not rebutted by the fact that the remaining payments thereon were made with money obtained by their joint note secured by their joint mortgage on said land and other separate property of hers, he never having paid anything on the note, but it having been reduced by payments from her separate property, and the balance having been assumed by a purchaser of the property." (*Heney v. Pesoli,* 109 Cal. 53, 41 Pac. 819; *Corbett v. Sloan,* 52 Wash. 1, 99 Pac. 1025; *Flournoy v. Flournoy,* 86 Cal. 286, 21 Am. St. 39, 24 Pac. 1012; *Woods v. Whitney,* 42 Cal. 358; *Higgins v. Higgins,* 46 Cal. 259.)

Ed. R. Coulter, for Respondents.

"As a rule, property purchased with borrowed money by either spouse during the existence of the community is community property." (*Northwestern & P. H. Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516; *Schuyler v. Broughton,* 70 Cal. 282, 11 Pac. 719; *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398; *Maine v. Scholl* (Wash.), 57 Pac. 800; *Heintz v. Brown,* 46 Wash. 387, 123 Am. St. 937, 90 Pac. 211; *U. S. Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870; *Carlson v. Carlson,* 10 Cal. App. 300, 101 Pac. 923.)

SULLIVAN, J.—This action was brought by the appellant, who was plaintiff in the trial court, to quiet title to the northeast quarter of the southwest quarter of section 17, township 11 north of range 6 west of Boise meridian, in Washington county, and Lot 4, block 7, of Galloway's addition to the city of Weiser.

The cause was tried by the court with a jury and certain questions were submitted to and answered by the jury, to a

part of which answers counsel for respondent excepted and moved to have set aside. Said motion was granted and the findings of the jury were set aside and the court thereafter filed its own findings of fact and conclusions of law, and entered judgment adjudging and decreeing that seventy-three per cent interest in said forty-acre tract of land was community property, and twenty-seven per cent interest was the separate estate of the wife; and also quieted the title to said lot 4 in appellant.

It appears from the evidence that appellant is a married woman and removed from the state of Indiana to Washington county, Idaho, about three years prior to the trial of this action, and has been making her home in said county since that time. Her husband, L. A. Stewart, was a carpenter by occupation and has been following his trade a part of the time during those three years in the city of Weiser. Not being able to secure continuous employment, he entered into partnership with one Hawes in running a carpenter and planing shop in that city. At that time the said Hawes was in debt to the respondent lumber company in the sum of about $300. The lumber company thereafter pressed for payment of said indebtedness against Hawes, and the said L. A. Stewart finally signed a certain promissory note with said Hawes as surety for said indebtedness. When said promissory note became due, the lumber company brought suit against Hawes and Stewart and attached and sold their carpenter-shop and attached said lot 4 and said forty-acre tract of land. Thereupon the appellant brought this suit to quiet title to said lot and said forty-acre tract, she claiming that she is the sole owner of said land and that her husband had no interest in or to either of said tracts.

Before coming to Weiser, the appellant owned certain property in the state of Indiana, which she inherited from her father's estate. When she went to Weiser, she took with her part of the proceeds of the sale of that separate estate and deposited $2,500 thereof in the First National Bank of Weiser. Thereafter plaintiff purchased the forty-acre tract above described from one Myers, through his agent, McKin-

ney, paying $1,025 cash on·the purchase price at the time of the purchase, and assumed a mortgage then on the forty-acre tract for the sum of $1,200, designated as the Viele mortgage, and for the remaining part of the purchase price gave two notes, aggregating $1,546.65, and secured the payment of the same by a second mortgage on said forty-acre tract, which mortgage and notes were executed by appellant and her husband, L. A. Stewart, in favor of said Myers. It appears that the purchase price agreed on for said land was $3,800, which also included some twenty-six head of cattle and farm machinery. Thereafter the appellant received from her separate estate $1,200, which she deposited in said bank at Weiser, and thereafter borrowed of one Morrison $1,100, and with this sum and sufficient of her own separate money paid off the Myers mortgage of $1,546.65 and interest, leaving unpaid the Viele mortgage of $1,200 and the Morrison mortgage of $1,100. It is clearly shown from the evidence that the husband has not been able to make a living for the family, and that the appellant has used some of her separate funds for that purpose as well as for making said payments on said forty-acre tract of land; and it clearly appears from the evidence that she purchased said land and lot as and for her own separate estate, and made all of the payments that were made on the same out of her own separate money; that she paid $525 for said lot; that the husband has never paid one cent on said land or lot, and all that he did was to sign said mortgage and notes, and it appears from the whole record that he signed them simply as a formality or assuming that it was necessary to do so in compliance with the provisions of sec. 3107, Rev. Codes. Said section is as follows:

"No estate in the real property of a married woman passes by any grant or conveyance purporting to be executed or acknowledged by her, unless the grant or instrument is acknowledged by her in the manner prescribed in chapter 3 of this title, and her husband, if a resident of the state, joins with her in the execution of such grant or conveyance."

That section is found in the Revised Codes which was adopted by the legislature and approved by the governor Jan-

uary 12, 1909. This section is found in the Rev. Stats. of
1887 of Idaho as sec. 2922, and in the 8th Territorial Session
Laws of 1875, p. 596. Also see 1st Terr. Sess. Laws 1864, p.
528, and 4th Terr. Sess. Laws 1867, p. 138. Sec. 2495 of
the Rev. Stats. of 1887, which provided that all property of
the wife, owned by her before marriage, and that acquired
afterward by gift, bequest, devise or descent, is her separate
property, was amended. (See Sess. Laws, 1903, p. 345.) The
amended section provides, among other things, that during
the continuance of the marriage, the wife has the manage-
ment, control and absolute power of disposition of her sepa-
rate property, and may bargain, sell and convey her real and
personal property and may enter into contracts with refer-
ence to the same in the same manner and to the same extent
and with like effect as a married man may in relation to his
real and personal property. The code commissioner who
made a revision, compilation and codification of the laws of
the state of Idaho, under an act approved March 12, 1907
(Sess. Laws 1907, p. 178), retained in said Revised Codes said
sec. 2922 of the Rev. Stats. of 1887, making it sec. 3107 of the
Rev. Codes of 1909. He also retained a part of the amend-
ment of sec. 2495, Rev. Codes, as amended by Laws of 1903,
p. 345, as sec. 2677 of the Rev. Codes. So our statutes stand
to-day as containing sec. 2677, which gives the wife the man-
agement, control and absolute power of disposition of her
separate estate, and also retains said sec. 3107. Here we find
a direct and irreconcilable conflict between the provisions
of said sections; but as the amendment to sec. 2495, Rev.
Stats. of 1887, was enacted in 1903, it must, of course, con-
trol, that being the latest expression of the legislative will
on that subject. Under the provisions of said sec. 2677, Rev.
Codes, it is not necessary for the husband to join with the
wife in the conveyance or encumbrance of her real estate.

This court held in *Bank of Commerce v. Baldwin,* 14 Ida.
75, 93 Pac. 504, 17 L. R. A., N. S., 676, that under the pro-
visions of sec. 2 of the act of March 9, 1903 (now sec.
2677, Rev. Codes), the wife has the management, control
and absolute power of disposition of her separate property,

and that the statute confers upon her all of the privileges of contracting in relation thereto and all of the rights and privileges necessary to the complete enjoyment and power of disposition thereof, virtually holding that it was not necessary for the husband to sign any conveyance made by the wife of her separate real estate or any encumbrance thereon. That decision was rendered in 1908, before the Revised Codes were adopted. (See, also, to the same effect, *Booth M. Co. v. Murphy,* 14 Ida. 212, 93 Pac. 777.)

Said act of 1903 repealed all acts and parts of acts in conflict therewith; hence it repealed said sec. 3107, Rev. Stats. of 1887, as it was in conflict with the act of 1903. Evidently the code commissioner overlooked the fact that said sec. 2922, Rev. Stats., now sec. 3107, Rev. Codes, had been repealed. However, as it appears in the Revised Codes that the provisions of said sec. 3107 were in force, any careful business man in taking a mortgage upon the separate property of a married woman, or in taking a conveyance thereof, out of an abundance of caution, if for no other reason, would require the signature thereto of the husband, if he resided within the state; and it was no doubt on account of the provisions of said section that McKinney, the agent of Myers, who sold said forty-acre tract to the appellant, required the husband of the plaintiff to join in said mortgage and notes. The record shows that the husband did not sign said mortgage with the intention or purpose of making any payments thereon or with the intent or purpose of securing any interest therein for himself or for the community. It also appears that the husband has not farmed said land or raised any crops thereon whatever; that the appellant had leased the land and received a share of the crop as her rental, and under that state of facts the jury found that said lot in Galloway's addition was paid for from the separate funds of the appellant, and that all of the money used in the purchase of the said forty-acre tract was the money of said appellant; that it was the intention of the plaintiff and also of her husband, at the time of said purchase, that said land should be the wife's separate property and not community property, and

that the said husband had no interest in said property whatever at the date of the trial and that the appellant was the owner thereof; that at the time of said purchase the husband was solvent; that the plaintiff at the time of the purchase of said lot and land purchased the same as and for her separate property. The jury, no doubt, in some of its findings found conclusions of law rather than ultimate facts, but the findings clearly indicate the conclusions of the jury, and we think are fully sustained by the evidence.

After setting aside the findings of the jury, the court proceeded and found that the plaintiff and L. A. Stewart were husband and wife; that said lot 4 was the separate property of the wife purchased with the proceeds of her own money; that the consideration paid for said forty-acre tract was $3,800, and that the appellant at the time of the purchase paid $1,025 thereof in cash that belonged to her separate estate, and that the remainder of the purchase price, the $1,200 note in favor of Viele and secured by mortgage, was assumed by appellant and her husband, and for the balance of $1,546.65 the appellant and her husband gave notes and mortgage to Myers, and that an undivided twenty-seven per cent interest in and to said forty-acre tract belonged to and was the sole and separate estate of the appellant, as she had paid $1,025 therefor, of her own funds, and that the remaining seventy-three per cent interest in said forty-acre tract was community property belonging to the community of plaintiff and her husband, and as such it was subject and liable to the judgment obtained by the said lumber company, and directed the sale thereof under execution in favor of the lumber company. There is not a scintilla of evidence to show that the husband assumed the payment of the $1,200 mortgage. The appellant testified that she assumed its payment, and there is no evidence to support the finding of the court on that point.

The question presented here is: Did the assumption of the Viele mortgage by the appellant and the signing of the notes and mortgage given to Myers by the husband give the community any interest in said property so purchased, when

the husband had not expended any of his separate funds or any community funds in payment of said purchase price? In other words, under the facts, is seventy-three per cent interest in said property community property subject to sale under execution in satisfaction of a judgment obtained against the husband? All he had done was to sign the Myers mortgage and subsequently sign the Morrison mortgage which was substituted for the Myers mortgage after the appellant had paid more than $500 of her own money thereon.

It is clear under the facts and the law that said forty-acre tract and said lot are the separate property of the appellant, and that the court erred in holding that seventy-three per cent interest in said property was community property, and that if said mortgage, signed by the husband, was ever foreclosed, whatever interest had been secured by the payment of the wife was subject to the payment of said debt. The community had not paid one cent on the purchase price of said lot and tract of land, and in fact would not do so, as the mortgage security was amply sufficient to pay said debt. The court no doubt intended to follow the opinion of this court in *Northwestern & P. H. Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516, where it was held that property purchased in the name of the wife, partly with funds from her separate estate and partly with money borrowed during the existence of the community, is the separate estate of the wife to the extent which her separate funds were used, and community property to the extent that such borrowed money was used in its purchase. That case is clearly distinguishable from the case at bar. The money there borrowed, or about $750 of it, was paid on the purchase price of the land; while in the case at bar the purchase price of said forty-acre tract has not been paid, except a part paid by the wife with her own funds. The debt still remains due to the amount of the mortgage signed by the husband and to the amount due on the Viele mortgage assumed by appellant. Had money been borrowed by the community at the time of the purchase of said forty-acre tract and paid on the purchase price, this case would then have been similar to the Rauch case.

This court went to the limit in that case, and will not now hold, under the facts as here presented, that any part of said forty-acre tract is community property. The only security the husband gave was the signing of the note and mortgage, and if the community had any assets, the judgment creditor could enforce his claim against such assets.

The case of *Heney v. Pesoli*, 109 Cal. 53, 41 Pac. 819, is a case quite similar to the one under consideration. Under a statute similar to our own, which provides that all property owned by the wife before marriage and that acquired afterward by gift, bequest, devise or descent, is her separate property, the court held under the laws of that state that the presumption arising from a deed to a married woman, strengthened by the fact that the first payment was with her separate property, and that at the time of the purchase, when her husband was solvent, they both declared that she was buying it for herself, with her own money, and was going to pay for it, is not rebutted by the fact that the remaining payments thereon were made with money obtained by their joint note secured by their joint mortgage on said land and other separate property of hers, he never having paid anything on the note, but it having been reduced by payments made by her from her separate property, and the balance having been assumed by a purchaser of the property from her. In the course of the opinion, the court said:

"In the present case, the extrinsic evidence tended to show the intent to purchase the property by plaintiff as her separate estate, which intent was acquiesced in by her husband. That being so, the money borrowed and secured by a mortgage upon her separate property became also her separate property, and when it went to pay the residue of the purchase price of the land the whole estate vested in the plaintiff as her separate property. It is rational to conclude that money borrowed upon the security of the separate real estate of one of the spouses will, in the absence of any showing to the contrary, be treated as separate property of the party owning such real estate. A like rule is applicable to funds

raised upon the security of community property.'' (See, also, *Corbett v. Sloan,* 52 Wash. 1, 99 Pac. 1025.)

The record shows that the husband was solvent at the time of the purchase of said property. He and the appellant both testified that she purchased it as and for her separate property. McKinney, the agent of the owner, also testified that she purchased it for her separate property. There can be no question from the evidence that such was the intention of the parties, and now to hold that seventy-three per cent interest in said property became the property of the community would be making a new contract for the parties,— one that never was intended, and a contract on which the community had never paid one cent. Said forty-acre tract was not sold on the credit of the community, but it is apparent that it was sold upon the credit of the plaintiff, and that Myers, the former owner, looked to said plaintiff and the land for the payment of said mortgage and not to the husband. (As bearing upon this question, see *Flourney v. Flourney,* 86 Cal. 286, 21 Am. St. 39, 24 Pac. 1012.) The contract of a married woman in regard to her own separate estate ought to be construed the same as other contracts, and where it is clear, as it is in this case, that no fraud was intended to be perpetrated and was in fact not perpetrated upon the creditors of the husband, such creditors ought not to be permitted to subject the wife's separate property to the payment of the husband's debts. It is a well-established rule that the presumption that property acquired during marriage is community property may be rebutted.

It was held in *U. S. Fidelity & Guaranty Co. v. Leek,* 58 Wash. 16, 107 Pac. 870, that where property is acquired during marriage, the test of its character as community property is whether it was acquired by community funds or community credit. In the case at bar, said forty-acre tract was not acquired by community funds or community credit. Simply because the husband signed the mortgage, as was apparently required by said sec. 3107, is no indication that the property was purchased in part by community credit.

After stating the rule that the presumption is that property acquired during the marital relation is community property but that such presumption may be rebutted, the court in the last-cited case said: ''This presumption has been met and clearly overcome in this case.'' Referring to the case of *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398, where it was held that the funds borrowed by the wife, even though borrowed on her separate property, or on property in which she had invested her separate funds, was community property, and to that extent at least the property in controversy was paid for with community funds and became community property, the court said: ''We do not desire to further extend the rule announced in that case. In that case, and in the cases from this court there followed, the separate estates were not sufficient to make the purchases, and the credit of the community was drawn upon to complete the purchases. Money was actually borrowed and used for that purpose, so that a community obligation was created and a resulting community interest followed.'' That court there concluded that it had gone to the limit in the Yesler case. In that case the separate estate of the wife was not sufficient to make the purchase and the credit of the community was drawn upon to complete the purchase. In the case at bar the wife's separate estate was amply sufficient to pay the balance due on the purchase price, and after the execution of said $1,500 mortgage, she paid from her own funds over $500 on that indebtedness. The credit of the community in the case at bar was not drawn upon at all, and it does not appear that the community had any property or credit whatever to be drawn upon. Appellant was not required to create a community obligation when she purchased this property, and did not intend to do so. She entered into a contract which her separate estate was sufficient to protect and which she partly performed with separate funds, and without doubt intended to carry out as her separate contract without calling upon the community for anything whatever. To hold otherwise in such a case as the one at bar would require us to hold that a married woman may not purchase real estate as her separate property except

for cash, and may not make contracts and incur liabilities to the same extent as though she were unmarried, and this we cannot do under the provisions of sec. 2677.

It has been suggested that any other construction than that contended for by counsel for respondent would open wide the door for frauds to be perpetrated by the wife; but if such frauds are attempted, courts of equity have ample power to protect creditors in the collection of their debts against the community out of the community property, and in the case at bar, it is clear beyond any doubt whatever, as there is no evidence to the contrary, that the appellant paid from her separate estate all that was paid on said real estate, and that she had ample means to pay the balance due on the purchase price on said forty-acre tract of land.

The judgment is reversed and the cause remanded, with instructions to make findings of fact and conclusions of law and enter judgment quieting the title to said forty-acre tract in appellant in accordance with the views expressed in this opinion.   Costs awarded to appellant.

Stewart, C. J., concurs.

AILSHIE, J., Concurring.—It seems to me that there can be no doubt but that the two notes aggregating $1,546.65 executed by both husband and wife and delivered as a part of the purchase price for this land became community obligations.   They were signed by the two members of the community partnership, and an action might be maintained against both on these obligations.   The fact, however, that these notes were secured by mortgage on the land purchased and for which they were given as a part of the purchase price indicates at least a purpose to secure and pay the obligation out of the separate property of the wife, provided that property should be sufficient for such purpose.   It should be remembered that there was already a first mortgage on this property, and should that mortgage be foreclosed and exhaust the security in its satisfaction, the creditor would undoubtedly proceed against both husband and wife on the notes secured by the second mortgage.   The creditor in such case

would be entitled to a judgment against the husband as well as the wife, and such judgment would run against the community property and estate.

The state of Washington has taken an advanced position in the matter of conferring on the wife absolute and plenary powers in the acquisition of property and in the management and control of her separate estate. The court of the state in the case of *Heintz v. Brown,* 46 Wash. 387, 123 Am. St. 937, 90 Pac. 211, after commenting on its previous decisions, said: ''The funds borrowed by the wife, even though borrowed on her separate property, or on property in which she had invested her separate funds, was community property, and to that extent at least the property in controversy was paid for with community funds and became community property''; and in *United States Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870, the same court said: ''Where property is acquired during marriage, the test of its character as community property is whether it was acquired by community funds or community credit, in which case it is community property.''

The court in the present case devotes some time in an endeavor to distinguish this case from *Northwestern & Pacific Hypotheek Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516, but it does not seem to me that the distinction attempted to be pointed out exists. The $745.60 borrowed in that case and which the court there held represented community property or a community interest in land was money borrowed from the bank and for which the identical mortgage then being foreclosed was given. In other words, it was a part of the purchase price paid for the identical piece of land and a part of the mortgage then being foreclosed. Here the only difference is that the controversy arises, not between the mortgagee and the members of the community, but between the members of the community and an attaching creditor. It seems to me that the distinguishing feature, if any, existing between the two cases is that here the action is not one to collect the loan so made or enforce the security, but that, on the contrary, it appears that the community obligation has never been dis-

charged, and that the separate property of the wife is still held as security for that obligation, and until the debt is discharged and it is made to appear that the community has paid or discharged that obligation in whole or in part, it cannot be said that the community owns any interest in the land so purchased. It is conceded that all that has ever been paid on the land so far was paid out of the separate property and estate of the wife. A creditor of the husband or of the community cannot, therefore, pursue this property until such time as he can show that the community has contributed something toward the payment for this land and then only to the extent of such community interest.