305 P.2d 737

Ray A. SHOVLAIN, Plaintiff-Appellant,
v.
Rebekah SHOVLAIN, Defendant-Respondent,
No. 8448.

Supreme Court of Idaho.
Dec. 18, 1956.

Davison & Davison and R. H. Copple, Boise, for respondent.

Gigray & Boyd, Caldwell, for appellant.

TAYLOR, Chief Justice.

The parties were married August 2, 1954. Plaintiff (appellant) owned separate property consisting of real estate upon which was located a service station, cafe and motel, encumbered by two mortgages securing an aggregate indebtedness of some $16,000, and personal property consisting mostly of equipment pertaining to the station, cafe and motel. Defendant (respondent) owned separate real property upon which was located a small pumice block building, and which was encumbered by a mortgage securing a balance owing of $2,700. After the marriage the parties concluded to enlarge the building upon defendant's property and operate a cafe therein. To obtain funds for this project, $15,000 was borrowed and a mortgage, executed by both parties, encumbering defendant's property, was given as security. $2,700 of the loan was disbursed by the mortgagee in payment of the debt to the holder of the prior mortgage. The balance of the loan, $12,300, was paid to the parties at intervals during the construction period, and was the estimated cost of completing the building. Construction was commenced in October, 1954, and finished about March 2, 1955, when the cafe was opened for business.

As the proceeds of the loan were received they were deposited in a joint bank account of the parties. Plaintiff testified he had over $1,000 in the account at the time of marriage. Construction was under the direction and control of plaintiff. He drew checks on the joint account for materials and labor as the work progressed. At the trial he offered in evidence a group of checks which he testified represented expenditures made for the construction of

the cafe building and which total $12,272.19. Some of the items represented by the checks were challenged by the defendant, she testifying that a total of $459.25 of the expenditures, so represented, were for the use and benefit of the separate property and business of plaintiff. Some of these challenged items were admitted by plaintiff to be erroneously included in his statement of building expenses. $2500 of the proceeds of the loan was used as a down payment on equipment for the new cafe, which was known as "Becky's" cafe.

The parties had a verbal agreement that defendant would have charge of the hiring and supervision of the help in the operation of both cafes, and that plaintiff would "oversee the supervising" and buy the groceries and supplies for both cafes.

Within a few days of the opening of Becky's cafe the parties had a disagreement concerning the help employed by defendant, and concerning conduct of the plaintiff which defendant regarded as insanitary. These differences became quite bitter and formed the basis of the complaint and cross-complaint upon which each of the parties was granted a divorce from the other on the ground of extreme cruelty.

The cause was tried in November, 1955, and judgment entered January 6, 1956.

No issue is raised as to the divorce. Appellant assigns as error certain findings and conclusions of the trial court on the ground that they are not supported by evidence. The first is the finding that plaintiff's separate estate is obligated to the community in the sum of $3,344.93. This finding is based upon the testimony of the plaintiff that during the marriage he paid, upon the first mortgage lien against his separate property, the sum of $976; on the second mortgage on the same property the sum of $1,350; in payments maturing on the automobile, which he acquired before the marriage, the sum of $594; taxes on his separate property, $54.93; and a deep fat fryer for his separate cafe business, $370. The source of payment of these items was the joint bank account into which plaintiff deposited the income from his separate business properties, over and above that which was paid out in cash on current bills and living expenses for himself and defendant. Such income was community property. § 32–906, I.C.; Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278. Other than the $1,000, which he claimed to have in his bank account before marriage, plaintiff makes no claim that he had separate funds from which these items could have been paid. Thus the court's finding that they were paid with community funds, and its conclusion that his separate estate became obligated to the community therefor, is sustained, at least to the extent of $2,344.93.

The second assignment attacks the finding that, of the $12,300 deposited proceeds

of the loan, $9,049.42 was expended to improve defendant's separate estate, and that $2,500 for equipment, $150 for power, and $100 for poultry, of the loan funds, were expended in the Becky's cafe venture, which was a community enterprise, and that the community is obligated to defendant's separate estate in the sum of $3,250.58.

It is not clear how the court arrived at the sum of $9,049.42 found to have been expended on the building. But, if we add to the $2,750, expended on the Becky's cafe business, other items which defendant testified were expended therefrom in plaintiff's separate business, the difference of around $200 is not so great that we can say the finding is not supported by the evidence.

The third finding attacked is to the effect that defendant suffered a net loss of approximately $3,000 in the value of her separate estate, as a result of plaintiff's management, and a further loss (if we understand the finding correctly) of $3,000 by the expenditure of defendant's separate funds in payment of community obligations. The shrinkage in value of her estate is supported by the testimony of a real estate broker that her lot with the completed building thereon was worth $25,000, and $10,000 of this amount was the value of the lot. Defendant testified the building which was on her property at the time of marriage was built sometime after she acquired the lot in 1947, at a cost of $3,000. Upon these facts the court found that her property had a total value of $13,000 at the time of marriage, less $2,700 encumbrance, leaving her equity at $10,300. The value at the time of trial, including the additional building, was found to be $25,000 less unpaid balance on the mortgage of $14,686.53, and less $2,998.87, the amounts of materialmen's and mechanics' liens filed against the property and unpaid at the time of trial, leaving her a net equity of $7,314.60. The shrinkage in value of her estate as found by the court is thus sustained. Evidence that defendant paid $8,300 for the lot in 1947, and testimony of plaintiff that a carpenter on the job told plaintiff he would charge $28,000 for construction of the building if he were contracting the job, if competent on the issue of value at the time of trial, serves only to create a conflict in the evidence.

The $3,000, found to have been paid upon community obligations from separate funds of the defendant, is based upon the fact that the proceeds of the loan were defendant's separate property. The loan was made upon the security of her separate estate, and her estate continues to be the primary source of future repayment. Stewart v. Weiser Lbr. Co., 21 Idaho 340, 121 P. 775; Wilkerson v. Aven, 26 Idaho 559, 144 P. 1105; Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278. There is no evidence of any agreement between the parties to change defendant's separate estate to community.

As to amount, this finding is based upon the same evidence which we have seen is sufficient to support the finding that $3,250.58 of the loan proceeds were used for community obligations and not in the erection of the building.

Appellant contends that he should not be held responsible for the depreciation in the net value of defendant's estate resulting from the building and the expenditure of the loan funds. This is a question we think unnecessary to decide. The trial court gave defendant judgment against plaintiff for $3,000. Assuming this was intended to cover the depreciation in defendant's estate, it could also in part be supported by requiring the plaintiff to reimburse defendant for her one-half of the community funds expended by plaintiff to enhance the value of his separate estate, and also by requiring him to account to her for loan proceeds expended upon community obligations.

The judgment also provides that the plaintiff may pay the sum awarded defendant by applying it in satisfaction of liens against her separate property. This would afford him some protection against his obligation on the mortgage note.

Appellant further contends that the loan in large measure was made upon his credit as an experienced cafe operator, and that the improvement was made under his management and supervision for the interest of the community. Appellant apparently argues that since the new cafe was a community enterprise, the building must also be community. The conclusion does not necessarily follow. There was an agreement between the parties for the operation of the cafe business, but none affecting the real property. In such circumstances it is presumed the husband intended to contribute his efforts to the benefit of the wife's separate estate. Heslip v. Heslip, 74 Idaho 368, 262 P.2d 999; Lombardi v. Lombardi, 44 Nev. 314, 195 P. 93; Ammerman v. Crozier, 37 Ariz. 181, 291 P. 995; Dunn v. Mullan, 211 Cal. 583, 296 P. 604, 77 A.L.R. 1015, and annotation 1021; 41 C.J.S., Husband and Wife, § 479g; 11 Am.Jur., Community Property, § 40. See also: Larson v. Carter, 14 Idaho 511, 94 P. 825; Chicago Portrait Co. v. Sexton, 49 Idaho 128, 286 P. 615.

Judgment affirmed. Costs to respondent.

KEETON, PORTER and SMITH, JJ., concur.

ANDERSON, J., sat at the hearing, but died before decision was reached.