444 P.2d 421

Vera CARGILL, Plaintiff-Respondent,

v.

Roy L. HANCOCK, Defendant-Respondent,

and

Josephine Hancock, Defendant-Appellant.

No. 10061.

Supreme Court of Idaho.

Aug. 7, 1968.

Rehearing Denied Sept. 10, 1968.

Stephen Bistline, Sandpoint, John W. Gunn, Caldwell, for appellant.

Dwaine L. Welch, Payette, for appellee.

SPEAR, Justice.

Vera Cargill, the respondent herein, brought this action to quiet title to certain real property located in Gem County, Idaho, record title to which is in her own name, claiming to have purchased the property in 1960 with her separate funds and to have maintained possession and paid the taxes thereon since that date.

The appellant, Josephine Hancock, denied that respondent was the true owner of the property in question and further alleged that this action was being brought by both respondent and Roy Hancock (hereinafter the defendant) as part of a fraudulent attempt to deprive her of her community interest in said property. Appellant contends that the Gem County property was acquired as a result of certain trades directly traceable to former community property of the Hancocks located in Bonner County, Idaho.

The pertinent facts are as follows:

In September of 1949 Roy Hancock (defendant) and Josephine Hancock (appellant) as husband and wife, entered into a contract with one George Gregory to purchase a certain piece of real property located in Bonner County, Idaho (hereinafter referred to as the "Gregory property"); the contract provided for a $12,000 down payment and annual payments of $3,500 plus interest, payable on the 1st day of November, until the remaining balance of $28,000 had been paid on the contract. The evidence adduced at the trial in this cause conclusively established the source of the $12,000 down payment as being the sole and separate property of defendant, i. e., the proceeds from the sale of his ranch in Arizona owned prior to his marriage to appellant in 1947. In the fall of 1951 appellant left the defendant and the State of Idaho and returned to her mother's home in California where she has resided ever since. In the fall of 1952 defendant was in danger of the Gregory-Hancock contract being forfeited because he had been able to reduce the principal balance only by $3,000 in the three-year period the contract had been extant. The interest and principal payments made on the contract by defendant were accomplished through the sale of cattle which were on the ranch at the time it was purchased in 1949; thus no community profits or funds were used in payments made on the contract price. The defendant was additionally in default under the terms of the contract by failing to replace the cattle sold so as to keep the number of cattle in the herd above the specified minimum. Defendant advised appellant of the pending forfeiture of their contract and gave her an opportunity for her or her relatives to salvage the contract; this information was ignored by appellant who failed to answer defendant's letter. On November 7, 1952 George Gregory entered into a new contract with Vera Cargill (plaintiff-respondent herein—erroneously described as a widow instead of a divorcee) for the sale of the Gregory property in consideration of a $4,000 down payment with a balance of $21,000 to be paid in annual payments of $3,500 each commencing November 1, 1953; the $4,000 paid by respondent was her sole and separate funds. In effect Gregory was selling the property to respondent for the amount of the balance due on the Hancock contract, Gregory being interested merely in receiving the contract price as originally agreed upon between himself and the Hancocks. By decree granted in the cause of Hancock v. Hancock, Bonner County case No. 7149, dated March 30, 1953, defendant was granted a divorce from appellant. Respondent and defendant were married on June 14, 1954 and have lived as husband and wife ever since. Prior to such marriage, in Bonner County case No. 7117

(Gregory v. Hancocks—defendant and appellant herein), the Gregory-Hancock contract was forfeited by judgment entered in favor of Gregory on January 2, 1953. On November 17, 1954, in a straight across trade, respondent traded her interest in the Gregory property for the Oasis Ranch in Payette County, she again being erroneously described therein as a widow; this Payette County property was in turn traded for the Gem County property (the property in dispute in this quiet title action) and the assumption of an $8,600 mortgage existing on the Gem County property at the time (June 11, 1956) title thereto being taken by way of a warranty deed with defendant and respondent being named therein as the grantees and as husband and wife; and by quitclaim deed defendant transferred his interest to the property in dispute to respondent on September 19, 1960, respondent thereby becoming the sole holder of record title to the Gem County property. Appellant moved to set aside the judgment of divorce obtained against her by defendant Hancock in the divorce case No. 7149 on December 24, 1954, alleging fraud on the part of the plaintiff in that action in furnishing his attorney with the improper address of appellant in the State of California for substituted service. The order denying the motion to set aside such judgment in case No. 7149 and the order denying the petition to set aside the judgment of forfeiture of the Hancock contract by Gregory in case No. 7117 were jointly appealed to this court and reversed in Gregory v. Hancock, 81 Idaho 221, 340 P.2d 108, being cases No. 8613 and 8614 in the supreme court, the decision being dated May 21, 1959. The decree in Hancock v. Hancock, supra, was set aside by court order on March 22, 1961. Appellant's petition to set aside the judgment for forfeiture of the Hancock contract in Gregory v. Hancock, supra, was denied with prejudice on October 20, 1960, and notice of appeal filed therein by appellant on December 9, 1960. Such appeal must be deemed abandoned as well as appellant's action for damages for alleged fraud in the case of Hancock v.

Bandelin, Cargill and Hancock, Bonner County case No. 7229, which was filed July 22, 1953, with orders entered therein sustaining the demurrer of Bandelin, the attorney for Gregory and Roy Hancock, on May 22, 1954, and as to Cargill and Hancock (respondent and defendant herein) on May 22, 1954—such abandonment being noted in the decision of Gregory v. Hancock, supra, by this court.

On the basis of these facts the trial court specifically found that the Gregory property in Bonner County, which was sold to respondent in 1952, had been previously purchased by defendant Hancock and appellant while husband and wife; and that such property was purchased by the Hancocks with the sole and separate funds of defendant, Roy Hancock, and was therefore his sole and separate property and that appellant, Josephine Hancock, had no right, title, claim or interest therein. The trial court further found that although respondent and defendant have lived together, farmed together and paid joint income taxes and held joint bank accounts, that none of defendant's earnings were used in acquisition of the Gem County real property because such property was acquired by respondent through a straight across trade of other separate property acquired by her while she was a widow [in fact, a divorcee, after the Hancock decree of divorce had been set aside in 1961]. The trial court then concluded that respondent was entitled to a decree quieting her title to the lands involved against defendant Roy Hancock and appellant Josephine Hancock and any and all persons claiming any part thereof through either of said persons.

This court is of the opinion this conclusion is correct and the judgment entered thereupon should be affirmed.

Issue: Status of the Original Gregory Property as Separate or Community Property—Source Doctrine

It is undisputed that the source of the funds comprising the $12,000 down payment on the original Gregory-Hancock contract (1949) came from the defendant's

sole and separate property—the proceeds from the sale of his ranch in Arizona owned prior to his marriage to appellant in 1947.

 While this court recognizes the presumption that all property acquired by spouses during coverture is community property, that presumption is rebuttable "when ·the source of the property can be established with reasonable certainty and particularity as the separate property of one or the other [spouses] * * * and the property so traced retains its character as separate property." Stahl v. Stahl, 91 Idaho 794 at p. 797 (and numerous cases cited therein for that proposition), 430 P. 2d 685, 688 (1967).

 At the outset, this court is confronted with the findings of fact of the trial court, and with the general rule that a finding of a trial court that property is either separate or community, when supported by competent evidence, is binding and conclusive upon the appellate court. If it is based upon conflicting evidence or upon evidence which is subject to different inferences, we will not disturb such a finding on appeal. Fisher v. Fisher, 86 Idaho 131, 383 P.2d 840 (1963); Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960). *A fortiori* where that finding is based upon evidence which is neither conflicting nor controverted at trial, it must be upheld. The trial court here found that the Gregory property was initially purchased with the sole and separate funds of defendant Roy Hancock and was therefore his sole and separate property, appellant Josephine Hancock acquiring no right, title or community interest therein. Additionally, the court found that none of defendant Hancock's earnings while he was farming with respondent Cargill were ever used in the acquisition of the Gem County property, that property being acquired by respondent through straight across trades of her separate property.

 I.C. § 32–903 provides in pertinent part that:

"All property of either the husband or the wife * * * which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property."

Stated somewhat differently, "[t]he crucial question in determining the status of such property is the source of the funds with which it was purchased." Rose v. Rose, supra, see 82 Idaho 395 at p. 399, 353 P.2d 1089 at p. 1091; and also Stahl v. Stahl, supra.

In Stewart v. Weiser Lumber Co., Ltd., 21 Idaho 340, 121 P. 775 (1912), the wife made a down payment (27% of the purchase price) from her own separate funds on a certain piece of realty and thereafter assumed a first mortgage and second mortgage on said tract, the second mortgage and two promissory notes being signed by both the husband and wife. The court there held that no community interest was created in favor of the husband where he had not expended any of his separate funds or any community funds in payment of the purchase price. The mere fact that the husband co-signed the mortgage and notes did not create a community interest until and to the extent that it could be shown the community had contributed to the purchase of the land.

 Likewise, the fact that appellant signed the contract of purchase (Gregory-Hancock contract, 1949) could not serve to create a community interest in the property until it can be shown that community funds furnished some part of the payment in the acquisition of the property. (See concurring opinion of Ailshie, J. in Stewart v. Weiser Lumber Co., Ltd., supra.) This, appellant has failed to do. There is little or no evidence to support appellant's theory of the case which rests upon an exaggerated version of defendant Hancock's activities and dealings with respondent Cargill. All that the record clearly shows is that any contribution made by defendant was from his sole and separate property.

We find the following language, cited in Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893, 897 (1963), quoting from Horton v. Horton, 35 Ariz. 378, 278 P. 370, 371 (Ariz.1929), to be especially pertinent to the case at hand:

"'And when the part of the purchase price is separate funds and the balance is borrowed on a mortgage on the property and a note signed by both spouses at the instance of the mortgagee, as between the spouses, *unless the mortgage was afterwards paid from community funds*, the property is separate. (Citing cases)'" (Emphasis supplied)

The fact that we are here dealing with a purchase contract instead of a mortgage is immaterial—the same reasoning applies.

Moreover, assuming for the sake of argument that appellant did, in some undisclosed manner, acquire a community interest in the Gregory property, such interest was forfeited in Gregory v. Hancocks (defendant and appellant) in which the trial court denied appellant's petition to set aside the default contract foreclosure and no effective appeal has been taken therefrom.

Nor is appellant put in any better position by claiming a community interest through defendant Hancock's relationship with respondent.

It is generally recognized that in the absence of an agreement to pool earnings, a partnership, a joint venture, or circumstances sufficient to establish a constructive trust, neither a man nor woman cohabiting, with knowledge of the illegal nature of the relationship, acquires, by reason of such cohabitation alone, any rights in the accumulations of the other during the period of such illegal relationship. 31 A.L.R.2d 1255, § 6 at p. 1277; compare Warner v. Warner, 76 Idaho 399, 283 P.2d 931 (1955).

Furthermore, while respondent testified that defendant continued to stay on and help her farm the various properties in exchange for board and money furnished by her, the record is silent as to any specific contributions made by defendant in the acquisition of the Gem County property, and this the trial court so found. Such finding, being supported by the record, will not be overturned by this court on appeal.

Appellant assigns as error the failure by the trial court to find respondent guilty of conspiring with defendant to fraudulently deprive appellant of her community interest in the property in question derived from the alleged community interest of appellant in the Gregory property in Bonner County. The allegations in her answer concerning the alleged fraudulent and conspiratory acts on the part of defendant and in which respondent is alleged to have participated are almost identical with those contained in her petition to set aside the contract forfeiture judgment in Gregory v. Hancocks (Bonner County Case No. 7117) and Josephine Hancock v. Bandelin, Cargill and Hancock (Bonner County case No. 7229). In both of these causes the trial court has held adversely to appellant's contentions relative to the fraud practiced upon her by the various parties involved and as previously noted hereinbefore, both of those actions must now be deemed abandoned.

Appellant was successful in the combined appeal of Gregory v. The Hancocks, and Hancock v. Hancock, supra, in establishing to the supreme court's satisfaction that defendant Roy Hancock (not respondent Vera Cargill) had perpetrated a fraud upon her and upon the courts by furnishing the attorney involved in both those cases with an improper address of appellant which was used in obtaining substituted service upon her. In the motion to set aside the judgment of divorce in Hancock v. Hancock, and in appellant's petition to set aside the judgment in Gregory v. The Hancocks, both of which pleadings were signed by appellant's Sandpoint attorney, the facts relied upon pertaining to the fraudulent procurement of the judgments were set forth in an Exhibit A attached thereto and by reference made a part of said motion and petition, such exhibit being a copy of the complaint in Hancock v. Ban-

delin, Cargill and Hancock, in which complaint (also signed by appellant's Sandpoint attorney) in a portion of paragraph XXII it was alleged as follows:

"That plaintiff [appellant herein] had no knowledge of either of said fraudulent actions [Gregory v. The Hancocks and Hancock v. Hancock] until after both of them had gone to a final judgment."

It is interesting to note that, contrary to the allegations hereinbefore quoted, in the cross-examination of appellant during the trial of the cause at hand in response to questions concerning whether or not she in fact had actual notice of the pending divorce action (Hancock v. Hancock) prior to the date the default was taken therein and also with reference to whether or not her Sandpoint attorney was representing her in that action prior to the date of the default, the following answer was given as part of appellant's sworn testimony:

"A My attorney in San Diego—Mr. Bistline sent the information to my brother-in-law, and my brother-in-law sent it to me, and I talked to an attorney in San Diego, and he sent the information up to Mr. Bistline, and he was supposed to represent me, and I had not thought about it in a long time.

* * * * * *

"Q How long was this before the divorce was actually taken?

"A Well, —

"MR. BISTLINE: If you know the answer to that.

"A Excuse me, I am not sure. *It could have been nine days or so before the divorce was taken.* I am not sure. All of this was a long time ago. [emphasis supplied]

"THE COURT: Nine days you say?

"A I am not sure, but I think that is right, Sir, Your Honor."

This testimony stands unimpeached and uncontradicted.

Additionally, in cross-examination of defendant by appellant's attorney, concerning some rebuttal evidence introduced through defendant, he was interrogated concerning an alleged conversation in 1963 in San Diego, with appellant, and the following transpired:

"Q What did you say that she said up there that she told you was not accurate testimony?

"A When you had my divorce set aside you claimed that she didn't know anything about me getting my divorce, and I pointed out to her the fact that she had hired you to represent her when I got my divorce, and when I went to get it my attorney called you and asked you if you were ready to go ahead with it."

This testimony is also uncontroverted.

Counsel for appellant moved to strike the above quoted testimony of defendant with other testimony concerning the source of funds paid on the Gregory-Hancock contract on the grounds that all of it was improper rebuttal or immaterial. The trial court's failure to strike is assigned as error.

The permissible scope of evidence offered in rebuttal rests in the sound judicial discretion of the trial judge, and unless the record clearly shows an abuse of such discretion, the trial court's ruling thereon must be upheld. Jones v. Talbot, 87 Idaho 498, 394 P.2d 316 (1964); Findley v. Woodall, 86 Idaho 439, 387 P.2d 594 (1963).

The testimony of defendant Hancock was properly admitted for the purpose of showing that appellant did not have any community interest in the Gregory property, thereby *rebutting* the general presumption that property acquired during coverture belongs to the community. As such, this evidence was a proper subject of rebuttal testimony and not solely a matter relevant to respondent's case-in-chief.

We have carefully examined all the remaining assignments of error listed in ap-

pellant's brief and find them to be equally without merit.

Judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR and Mc-FADDEN, JJ., concur.

McQUADE, J., concurs in the conclusion reached.