673 P.2d 411

**Virgil George WINN, Plaintiff-Appellant,**

v.

**Alfreda E. WINN,
Defendant-Respondent.**

No. 14529.

Supreme Court of Idaho.

Dec. 8, 1983.

Rehearing Denied Dec. 30, 1983.

812

Craig Marcus and Claude V. Marcus, Boise, for plaintiff-appellant.

James E. Risch, Boise, for defendant-respondent.

HUNTLEY, Justice.

By this appeal we deal with the recurring problem of the division of property acquired during marriage when all or substantially all payments on the debt were made from the separate property of one spouse.

Virgil and Alfreda Winn were married on June 3, 1972. A home was purchased in November of the same year for $27,346.14. Virgil paid $200 earnest money and the down payment of $3,146 from his separate funds. Title was deeded to both parties. The $24,000 balance was paid by procuring a loan secured by a deed of trust on the house. The note and deed of trust were signed by both spouses. All payments on the note, during and after the marriage, were made from Virgil's separate funds.

The Winns were separated in early 1977 and Alfreda moved out of the house. Virgil has at all times continued to live in the house. In March of 1977 Virgil filed for divorce, and a decree granting the same was subsequently entered.

Three judges have considered and ruled on this case. In proceedings in the magistrate's division of the district court, the magistrate held that the house was community property and that Virgil would be liable to Alfreda for rent for her one-half interest therein should he continue to reside in the house. This decision was appealed to the district court and the district judge concluded that the property was separate because the funds used to acquire it were traceable to separate property. The district court nevertheless ordered a trial de novo. However, a third judge presided over the trial de novo and came to the same conclusion that the magistrate reached in the first proceeding, that the home was community property and that Virgil would owe Alfreda rent for the period that he had sole and exclusive possession of the house. The court further held that Virgil was entitled to reimbursement for the payments made by him from his separate funds.

The character of all property acquired by either spouse during marriage is presumed to be community. *Stanger v. Stanger,* 98 Idaho 725, 571 P.2d 1126 (1977). The party asserting that the property is separate has the burden of overcoming this presumption by proving such separate character. *Estate of Freeburn,* 97 Idaho 845, 555 P.2d 385 (1976).

Virgil asserts that he has met this burden, as he has shown conclusively that the source of all payments on the loan was his separate property. His argument is premised on an incorrect application of the rule that the property or thing acquired partakes of the same nature as the property or funds used to acquire it, de Funiak & Vaughn, *Principles of Community Property,* § 77 (2d ed. 1971), or otherwise stated: "[t]he crucial question in determining the status of ... property is the source of the funds with which it was purchased," *Rose v. Rose,* 82 Idaho 395, 399, 353 P.2d 1089 (1960); *accord Stanger v. Stanger, supra; In re Estate of Cook,* 96 Idaho 48, 524 P.2d 176 (1974); *Cargill v. Hancock,* 92 Idaho 460, 444 P.2d 421 (1968); *Stewart v. Weiser Lumber Co., Ltd.,* 21 Idaho 340, 121 P. 775 (1912). Accordingly, the rule proceeds, when separate property is used to acquire an asset, that asset becomes the separate property of the acquiring spouse. Idaho Code § 32–903. Likewise, property gained through an exchange of community property is a community asset. See *Stanger, supra.* This principle is applied with relative ease in the case of a straight trade or purchase for cash; however the application of the rule is more difficult when classifying credit acquisitions. There is a distinct lack of consistency of approach to this area of law. Brockelbank, *Community Property law of Idaho,* § 4.3 (J. Henderson Ed. 1982). The confusion generated by this subject is not limited to Idaho. See de Funiak & Vaughn, *Principles of Community Property, supra,* § 78.

Although it is a sound principle that property acquired takes on the same charac-

ter as that of the funds or property used to acquire it, before the principle may be applied, the asset actually given in exchange for the property purchased must be identified. In the typical credit acquisition case, the proceeds of a loan are the asset by which the property is purchased, and the procurement of the loan and the application of the proceeds thereof to the purchase price are part of the acquisition process.

It is also crucial to ascertain when property purchased through credit is "acquired" for the purposes of the law of community property. The answer lies in the basic rule that "[t]he character of an item of property as community or separate vests at the time of its acquisition." *Freeburn, supra.*

Applying this analysis to the home purchased by the Winns, it is clear that the character of the house vested in November 1972 when it was acquired in substantial part with the proceeds of the loan. The contention that the general presumption in favor of community property is overcome by payments subsequent to that date is thus without merit.[1]

We now turn to the trial court's determination of the character of the loan proceeds used to purchase the house, for that establishes the community or separate character of the property.[2]

"[A]s a rule, property purchased with money borrowed by either spouse during the existence of the community is community property." *Chaney v. The Gauld Co.,* 28 Idaho 76, 84, 152 P. 468 (1915). This follows logically from the general presumption because the borrowed money is property received during marriage and because the community is generally liable for the debt. Therefore, to rebut the presumption that the house is community property, Virgil must prove with reasonable certainty and particularity that the proceeds of the loan were his separate property.

In determining the nature of the proceeds of a loan, examination must be made of the basis of the extension of the credit. The proceeds of loans made upon the security of a spouse's separate estate are separate, *Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1974); *Lepel v. Lepel,* 93 Idaho 82, 456 P.2d 249 (1969); *Shovlain v. Shovlain,* 78 Idaho 399, 305 P.2d 737 (1956), and those made upon the security of the community estate are community, see *Speer v. Quinlan, supra,* 96 Idaho at 130, 525 P.2d 314. This rule is based upon the fact that the estate providing the security is the primary source of repayment. However, when the collateral for the loan is the very asset for which the loan was obtained, a different approach is required.

Consistent with the importance attached to interspousal agreements, if there exists between the spouses an actual, articulated intent that the obligation be separate or community in character, that intent shall control. See, *Hooker v. Hooker, supra; Shovlain v. Shovlain, supra; Stewart v. Weiser, supra.* The Winns present a more typical situation however, in that no such intent was expressed nor exists on the part of either husband or wife. In such a case trial courts look to several factors to

---

1. Confusion has arisen in this area because some courts *have* allowed the source of subsequent payments to determine the character of the property. This is inconsistent with the rule that character of property vests at the time of acquisition and we reject it as having any bearing upon the nature of the property.

2. Although it is true that the principle of transmutation allows spouses to agree inter se to convert or transmute the character of property from community to separate, or separate to community and thereby change the character of the property subsequent to its acquisition, *Hooker v. Hooker,* 95 Idaho 518, 511 P.2d 800 (1973), property cannot be converted gradually from community to separate by one spouse making payments on a community debt from his or her separate funds. That would in effect allow *one spouse* to "buy" the community property and thereby unilaterally transmute its character. Such reasoning is violative of the fundamental of the transmutation doctrine: that the character of property may be changed *by agreement* between the spouses. Therefore, in the absence of any valid agreement between Virgil and Alfreda to transmute the character of the property in issue, its nature remains unchanged.

determine the characterization of the property as a matter of policy. A review of Idaho law reveals that a variety of considerations have been found to bear on this issue.

Principally, we remain mindful of the overarching policy in favor of community property, as evidenced by the general presumption and the strong standard of proof necessary to rebut the presumption.

The liability of the community for the loan is significant, *Freeburn, supra,* 97 Idaho 845, 555 P.2d 385; *Chaney v. The Gauld Co., supra,* 28 Idaho 76, 152 P. 468, as is the source of repayment, see *Speer v. Quinlan, supra; Shovlain v. Shovlain, supra.* Related to these concepts is the basis of credit upon which the lender relies in making the loan.[3] *Shovlain v. Shovlain, supra; Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954).

The nature of the down payment, *Cargill v. Hancock,* 92 Idaho 460, 444 P.2d 421; *Stewart v. Weiser Lumber Co., Ltd., supra,* 21 Idaho 340, 121 P. 775, and the names on the deed, *Northwestern & Pacific Hypotheek v. Rauch,* 7 Idaho 152, 61 P. 516 (1900), are probative of the parties' intent. Also relevant is who signed the documents of indebtedness. *Gapsch v. Gapsch, supra.*

The presence or absence of any or all of the above listed factors is relevant in determining the character of the credit by which a loan is obtained. None is conclusive. We deliberately refrain from selecting one item as dispositive. Such an approach is too rigid in light of our ultimate purpose of determining the likely intent of the spouses and in consideration of the highly individualistic and often complex fact situations presented. Judicial review therefore, must of necessity proceed on a case by case basis incorporating all relevant facts into the decision making process.

▇ In the case at bar, the house was deeded to both husband and wife, and they each signed on the promissory note and deed of trust. In case of default the lender's first option would be to foreclose the mortgage on the house. These facts generate a strong inference that the character of the property is community. In the absence of any relevant evidence to the contrary, the district court correctly found the house to be community property.

The payments made on the community obligation from Virgil's separate funds are subject to reimbursement to Virgil in the absence of a finding that such contributions were intended as a gift to the community. *Freeburn, supra.* There being no proof that Virgil intended the payments made on the debt to be a gift to the community, the trial court correctly found that he is entitled to reimbursement.

Alfreda is entitled to receive rent for Virgil's occupancy of the house subsequent to the date of separation, calculated at one-half the fair rental value of the property.

The decision of the trial court is affirmed, and the case is remanded for further proceedings consistent herewith. Costs to respondent.

DONALDSON, C.J., and SHEPARD, and BAKES, JJ., concur.

BISTLINE, Justice, concurring in part in the result.

That I have not joined the Court's opinion authored by Justice Huntley is not to be taken as evidencing my disagreement with what he has written. Rather, it is that in the Christmas rush of releasing opinions, there simply has not been an opportunity to give that review of prior cases a deserving study. Moreover, I do not believe that the issue presented calls for any exhaustive review of principles and doctrines of community property law. I find this case relatively simple on the facts, some of which are

---

**3.** We specifically reject the California view that the intent of the lender conclusively determines the nature of the loan. See *Gudeli v. Gudeli,* 41 Cal.2d 202, 210, 259 P.2d 656 (1953). We find this approach unrealistic, for although at the time the credit was extended, the lender may have relied on the credit of either the community or separate estate, his true intent most likely is to collect the debt any way he can. He is unlikely to consider himself bound by his initial basis of extension of credit.

documented. Basically, what we have here is a marriage of the parties occurring in June of 1972, just after Mr. Winn was fresh from divorcing his first wife, and presumably getting a first-hand lesson in the law of community property. The Winns apparently wearied of paying rent, and determined to be homeowners. Together they searched for a home, and together found one. The real estate broker, as is usually the case, wrote up an earnest money receipt and agreement, taking the paltry sum of $200 at that time. The Winns were able to borrow $24,000 of the total purchase price, which left them still owing $3,346.14—which Mr. Winn added, although nothing, absolutely nothing, in the record suggests that he did so with any understanding that the community owed him anything. The $200 could as well have been put up by Mrs. Winn, and again, nothing in the record suggests any understanding of the parties that at some future time Mr. Winn would be able to claim that the character of the property should hinge on the innocuous determination, if there was one, as to who of the two should write the $200 check.

To recapitulate the transaction, the Provident loan is evidenced by a deed of trust, Plaintiff's Exhibit 3, executed the first day of November, 1972, securing a $24,000 promissory note. The Lawyers Title Insurance company insured the title in the Winns by its policy no. C–28767 dated November 3, 1972, subject to the trust deed. Then, and long thereafter, on November 13, 1972, Mr. Winn's bank account was debited in the sum of $3,146.14, the balance of the agreed purchase price, leaving his account with a balance of $264.25. Plaintiff's Exhibit 1.

How the respondent can argue, and the Court can agree, that Mr. Winn made a down payment of $200 and $3,146.14 prior to their borrowing the money on their signatures and on the security of the trust deed, is beyond my comprehension. Clearly the Winns decided to buy a house and pay out interest (and bits of principal) instead of collecting rent receipts. Mr. Winn added that which couldn't be obtained from the lender. I have yet to see a more factual establishment of a community purchase.

Although I am not adamantly opposed to the majority's view that Mr. Winn is entitled to reimbursement for his $3,146.14, I do not subscribe to the view that Mr. Winn is entitled to credit for the monthly payments—which for certain were in the nature of the rent they had been paying, and surely gave him a nice tax deduction as well, absent some proof of which there is none, that the parties agreed to his paying that which ostensibly was in the power of either or both to pay.