571 P.2d 1126

**Dayle Franceen STANGER,
Plaintiff-Appellant,**

v.

**David K. STANGER,
Defendant-Respondent.**

No. 12544.

Supreme Court of Idaho.

Nov. 30, 1977.

C. Timothy Hopkins of Hopkins & French, Idaho Falls, for plaintiff-appellant.

D. Fredrick Hoopes of Hoopes & Johnson, Idaho Falls, for defendant-respondent.

DONALDSON, Justice.

This appeal concerns the characterization of property and the allowance of child support in a divorce action.

The plaintiff-appellant is the wife, Dayle Franceen Stanger. The defendant-respondent is the husband, David K. Stanger. The parties were married in 1961. They have lived in the Idaho Falls area for most of their marriage, except for the initial years when the husband was attending school. The parties have two children, a son and a daughter, ages fourteen and ten, respectively at the date of trial. The plaintiff filed for divorce in October, 1976.

The property in question is a 182 acre farm located in Bonneville County, Idaho. The farm was originally owned by the husband's parents, Mr. and Mrs. Leroy Stanger. The husband acquired the farm in 1974 from his parents when he gave them an annuity contract in exchange for a warranty deed to the property. The wife did not participate in this transaction. The husband was the sole grantee under the deed and the only obligor in the annuity contract. The contract called for annual payments of $7,500 per year commencing in 1975 and continuing to the death of the last surviving parent. At the time of trial, two payments had been made under the contract from income earned on the farm, totaling $15,000.

The elder Stangers had executed wills in 1971 leaving all of their property to the respondent husband and two of their other sons. These wills however were revoked in 1974 with the execution of new wills. The husband received no specific bequest under the 1974 wills. The husband did receive title to the farm in 1974 when he exchanged the annuity contract for the warranty deed. The annuity contract and warranty deed were used for the transfer to the husband because of the estate tax advantages and because the annuity contract would provide income for the elder Mr. and Mrs. Stanger.

The senior Mr. Stanger estimated the value of the land to be approximately $100,000 at the time the contract was signed and the deed executed. Farm machinery was also transferred for the annuity contract, the value of which was estimated to be approximately $4,000. The value of the annuity contract at that time, based on the life

expectancies of the parents, was $89,000. Because of the differential between the value of the contract and the property transferred, the elder Stangers declared a gift of approximately $15,000 had been made. United States Quarterly Gift Tax returns were filed in January, 1975 showing the gift had been made to the husband and wife. These returns were amended in January, 1977 to show a gift only to the husband. The parents' attorney testified that a mistake had been made on the 1975 returns and that a gift to the husband alone had been intended.

The wife introduced expert testimony at trial indicating that the value of the farm at the time of the trial was approximately $180,000. The wife contended that the 182 acre farm was a community asset in which she had a one-half interest. She also argued that the husband should provide child support for the education of the children after they reached their majority.

The district court held that the farm was the separate property of the husband. The district court concluded that the elder Mr. and Mrs. Stanger had made a gift of the entire farm to the husband, making it his separate property. The district court held that the only community interest in the farm was the $15,000 paid under the contract and that the wife was entitled to reimbursement in the amount of $7,500. The district judge found no authority for making an award of child support for educational purposes after the children reached majority.

The wife is claiming on appeal that the district court erred in both these determinations. We are presented with two issues.

(1) The character of the 182 acre farm; and

(2) The awarding of child support for educational purposes after the children reach their majority.

## CHARACTER OF THE PROPERTY

The definitions of community and separate property are found in the Idaho Code. Separate property is defined as "all property of either the husband or the wife owned by him or her before marriage, and that acquired afterward * * * by gift * * *." I.C. § 32–903. Community property is defined as "all other property acquired after marriage * * *." I.C. § 32–906. There is a rebuttable presumption that all property acquired during marriage is community property. *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974); *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685 (1967). This presumption can be rebutted, but the burden of proof rests upon the party who asserts that the property is separate. *Estate of Freeburn*, 97 Idaho 845, 555 P.2d 385 (1976). The farm was acquired during the parties marriage and it is presumed to be a community asset, with the burden resting upon the husband to prove otherwise.

The trial court held that the elder Stangers had made a gift of the 182 acre farm to the husband alone, making it his separate property. As a matter of law we do not agree with this conclusion and we reverse in part.

It is true that an element of gift was involved in the transfer of the farm from the elder Stangers to their son, the husband. This is evidenced by the difference between the value of the annuity contract and the value of the property transferred. The wife contends that if a gift was made she was an intended donee at the time of the transfer. The trial court found that the excess of the present market value of the property over the present market value of the annuity contract was intended as a gift to the husband alone, making at least a portion of the farm his separate property. Mr. Leroy Stanger and his attorney testified that it was the elder Stangers intent to make a gift to the husband alone and not to the husband and wife. Other evidence also indicated that the gift was intended only for the husband. The question of intent is factual. The finding of the trial court that this excess in value was intended as a gift to the husband alone is supported by substantial and competent evidence and will not be disturbed on appeal.

*Boston Insurance Company v. Beckett*, 91 Idaho 220, 419 P.2d 475 (1966). The trial court correctly concluded that the portion of the farm acquired by the husband as a gift was his separate property.

█ As a matter of law, however, we find untenable the conclusion that the husband receives the entire interest in the farm as a gift. A gift is defined as " * * * a voluntary transfer of property by one to another *without consideration or compensation therefor*." *Wood v. Harris*, 201 Okl. 201, 203 P.2d 710, 712 (1949); 38 Am.Jur.2d Gifts § 1 (1943). (emphasis added). The annuity contract clearly specifies that it is given as consideration for the warranty deed. The transaction was contractual in nature, based at least in part on consideration, and cannot be labeled a total gift.

In Idaho, either spouse can bind the community by contract. I.C. § 32–912. The annuity contract was a community obligation. The status of property acquired during marriage is determined by the funds with which it is purchased. *Cargill v. Hancock*, 92 Idaho 460, 444 P.2d 421 (1968). The fact that the husband was named as the only grantee in the deed and the only obligor named in the annuity contract is immaterial in determining the status of the property. *Bowman v. Bowman*, 72 Idaho 266, 240 P.2d 487 (1952). The farm was acquired in part by a contract which created a community obligation. The interest in the farm acquired by the contract must be considered a community asset subject to disposition as such on termination of the marriage.

It follows then that the farm is partly community and partly separate in character. This Court has recognized before that property acquired during marriage can have this mixed status. *Estate of Freeburn, supra*. The husband's separate property interest in the farm at the time of the acquisition would have been the excess of the fair market value of the property over the fair market value of the annuity contract. The remainder would be the community property interest. The fair market value of the farm at the time of the transfer is a necessary figure in determining the percentages of ownership. While the trial court's findings of fact state that the value of the farm was estimated by Mr. and Mrs. Leroy Stanger to be $100,000, this valuation was not adopted by the court, this valuation was unnecessary in view of the court's decision that the entire farm was the separate property of the husband. Additionally, the trial court made no finding as to the value of the farm at the time of divorce for the same reasons. These valuations must be specifically found. Once the fair market value of the total property at the time of the acquisition is established, the lower court can calculate what percentage of the farm is separate property and what percentage is community property.

█ Increase in value since 1974 must likewise be apportioned between the two interests. Any increase in the value of the farm due to community effort must be apportioned to the community interest. *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976). The natural increase in value of the community property interest of the farm must also be apportioned to the community, but any natural increase in value of the husband's separate property interest in the farm is not a community property asset. *Suter v. Suter, supra*.

█ Summarizing, on remand the district court shall determine the value of the farm at the time it was acquired. Comparison of this value with the already established value of the annuity contract at the time of the acquisition will determine what percentage of the farm is community and what percentage is separate. The court will also have to establish the value of the farm as of the day of the trial on remand. Once these two figures are established the court can calculate the amount of increase and apportion this increase in value between the community and separate property interests. The court then can total up the community debts including the balance then due on the annuity contract. These community debts should then be deducted from the community assets as well as all

attorney fees awarded to the plaintiff-appellant wife at trial and on appeal. *Mifflin v. Mifflin*, 97 Idaho 895, 556 P.2d 854 (1976). Since the divorce was granted approximately one year ago and the husband has presumedly been in possession of the farm during this time, certain adjustments are required. The husband should be given credit for any payments made on the annuity contract from his separate property. The court should also require an accounting of rents and profits accrued during the pendency of this appeal, deducting from the total rents and profits all proper expenses incurred and a reasonable amount as compensation for the work the husband has performed operating the farm. The court can then award the wife her share of the net rents and profits and make an equitable division of the balance of the community equity in the farm pursuant to I.C. § 32–712.[1]

## CHILD SUPPORT AFTER CHILDREN REACH MAJORITY

 The court's power to provide for maintenance of children ends once the children reach their majority. *Speer v. Quinlan, supra; Piatt v. Piatt*, 32 Idaho 407, 184 P. 470 (1919). The children will attain their majority at age eighteen[2] and the court cannot compel support payments beyond this date. We find no error in the district court's conclusion that child support payments could not be awarded beyond the children's majority.

That portion of the judgment finding the 182 acre farm to be the separate property of the husband is reversed and the cause is remanded to district court for proceedings consistent with this opinion; that portion of the judgment disallowing child support payments after the children reached their majority is affirmed.

 Rule 41 A of the Idaho Supreme Court Appellate Rules provides that "any party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed * * * ." This rule took effect July 1, 1977. The plaintiff-appellant's first brief, filed before July 1, 1977, did not ask for attorney's fees. Appellant's reply brief, filed after July 1, 1977, did contain a claim for attorney's fees pursuant to I.A.R. 41. The plaintiff-appellant has complied with the requirements of I.A.R. 41. As indicated earlier, these attorney fees should be deducted from the community interest before the court makes an equitable division of the property.

Costs and attorney's fees are awarded to plaintiff-appellant. *See* I.A.R. 41 D.

McFADDEN, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

---

1. "32–712. Community property and homestead—Disposition.—In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:

    1. The community property must be assigned to the respective parties in such propor-tions as the court, from all the facts of the case and the condition of the parties, deems just, regardless of the ground or grounds on which the dissolution decree is rendered.
    * * * ."

2. I.C. § 32–101.