611 P.2d 1055

**Virgil George WINN, Plaintiff-Respondent,**

v.

**Alfreda E. WINN, Defendant-Appellant.**

**No. 12951.**

Supreme Court of Idaho.

June 2, 1980.

James E. Risch of Risch, Goss & Insinger, Boise, for defendant-appellant.

Claude V. Marcus of Marcus & Marcus, Boise, for plaintiff-respondent.

BAKES, Justice.

Plaintiff respondent Virgil Winn filed this divorce action alleging, among other things, that the house in which he and defendant appellant Alfreda Winn resided was his sole and separate property. The case was tried before a magistrate. In a brief memorandum opinion, the magistrate granted the divorce and concluded that the residence was community property. Thereafter, the magistrate adopted verbatim the findings of fact, conclusions of law and judgment prepared by the wife's counsel. The husband appealed to the district court.

In a memorandum opinion, the district court was highly critical of the findings and conclusions of the magistrate. The court felt that the findings prepared by counsel were adopted in violation of the ruling of this Court in *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977). In *Compton*, we denounced the practice of routinely delegating the task of preparing the findings of fact and conclusions of law to counsel for the prevailing party. In the instant case, after discussing at length the magistrate's failure to adhere to the dictates of *Compton*, the district court proceeded to conduct an appellate review pursuant to I.R.C.P. 83(u)(1). The district court then "reversed" the magistrate's decision and ordered a trial *de novo* in the district court. As the district court saw it, it had two choices: it could either remand the matter to the magistrate for a new trial applying the correct rules of law or it could hold a trial *de novo*. It chose the latter, and this appeal followed.

Before the case was argued, we noted that the orders appealed from might not be appealable under I.A.R. 11. In response to our request, the parties filed additional briefing on this issue. Because we find that the decision of the district court is not an appealable order, the appeal is dismissed.

■ We commence our analysis by noting that if the district court had only ordered a trial *de novo*, such an order would not have been appealable. I.A.R. 11. Appellate Rule 11 contains no provision permitting an appeal from an order entered under I.R.C.P. 83(b), –(u), and I.C. § 1–2213 for a trial *de novo*. The problem in this case is that the district court also undertook an appellate review, ultimately concluding that the case must be reversed. Decisions by the district court dismissing, affirming, or reversing or remanding an appeal are appealable. I.A.R. 11(a)(1). We are thus confronted with an appeal that has two components, one of which ordinarily is appealable and one which ordinarily is not. Closely related to the appealability question is the issue of whether a district court, once having undertaken an appellate review, is empowered to thereafter order a trial *de novo* in the district court.

We first review the statute and rules pertaining to appeals to the district court from the magistrates division. I.C. § 1–2213(2) reads as follows:

"1–2213. APPEALS—POWERS OF DISTRICT JUDGE.—.  .  .

272

"(2) Unless otherwise provided by law or rule, a district court judge shall review the case on the record on appeal and affirm, reverse, remand, or modify the judgment; provided, that the district judge in his discretion, may remand the case for a new trial with such instructions as he may deem necessary or he may direct that the case be tried de novo before him."

Rule 83(b) of the Idaho Rules of Civil Procedure provides as follows:

"RULE 83(b). MAGISTRATE AP-PEALS—JUDICIAL REVIEW.—All appeals from the magistrate's division shall be heard by the district court as an appellate proceeding unless the district court orders a trial de novo; provided, however, all appeals from the small claims department of the magistrates division shall be heard by the district court as a trial de novo on the merits."

Rule 83(u) reads in pertinent part as follows:

"RULE 83(u). APPELLATE REVIEW. —The scope of appellate review on an appeal to the district court shall be as follows:

"(1) Upon an appeal from the magistrate's division of the district court, not involving a trial de novo, the district court shall review the case on the record and determine the appeal as an appellate court in the same manner and upon the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the appellate rules of the Supreme Court.

"(2) Upon an appeal from the magistrates division of the district court or a governmental agency, body or board, involving a trial de novo, or in which the court elects to hear additional evidence or testimony, the district court shall render a decision in the action as a trial court as though the matter was initially brought in the district court.

. . . ."

■ Although the district court has several options under the above rules and stat-

ute, these options fall basically into two categories. The district court may conduct an appellate review of the magistrate's decision just as this Court would conduct a review of a district court decision, or the district court may choose to wipe the slate clean by ordering a trial de novo and beginning the case anew. Appellant insists that these options are mutually exclusive. Appellant contends that the district court, having undertaken its appellate review, was not empowered to thereafter order a trial de novo. Thus appellant argues that the district court's order reversing the magistrate after an appellate review was the primary order entered and is appealable under I.A.R. 11(a)(1).

Although this Court has not specifically addressed this issue, there have been cases where we have recognized that the district court's options under I.C. § 1–2213(2) and I.R.C.P. 83 are not always mutually exclusive. For example, in *Hawkins v. Hawkins*, 99 Idaho 785, 589 P.2d 532 (1978), the district court had conducted an appellate review of a magistrate's decision in a child custody case. Although the district court did not order a trial de novo in that case, Justice Bistline, writing for the majority, observed:

"Furthermore, upon the appellate review conducted in a district court, the district court is, as is this Court on an appeal where the district court has been the factfinder, empowered to affirm, reverse, remand (including remand for a new trial with instructions), or modify the judgment. I.R.C.P. 83(u)(2). *Where the trial court's findings of fact are confused or in conflict, or where findings on a particular issue are lacking, and resort to the record does not show clearly what findings are correct, the district court ordinarily will not modify the judgment. Frederickson v. Deep Creek Irr. Co.*, 15 Idaho 41, 96 P. 117 (1908); 5B C.J.S. Appeal & Error § 1874 (1958). The district court will either remand for new findings, or, alternatively, act under I.C. § 1–2213(2) and I.R.C.P. 83(u)(2) *and conduct a partial or whole trial de novo.*" 99 Idaho at 789,

589 P.2d at 536 (emphasis added and footnotes omitted).

While this language is admittedly *dictum*, it nonetheless suggests that in appropriate circumstances a district court may order a trial *de novo* after conducting an appellate review.

*Koester v. Koester*, 99 Idaho 654, 586 P.2d 1370 (1978), is another case in which the district court conducted both an appellate review and a trial *de novo*. *Koester* was also a child custody case. The magistrate had given custody of the children to the husband. The wife appealed the magistrate's determination to the district court. In addition to contesting the magistrate's decision, the wife also alleged that there had occurred a change in circumstances which, she urged, should be considered by the district court in reviewing the trial court. The parties stipulated that the change in circumstances could be considered by the district court on affidavits.

Justice McFadden, writing for the *Koester* majority, observed that the district court's scope of review was different when it considered the affidavits. In reviewing the magistrate's record, the district court was confined to the role of an appellate court under I.R.C.P. 83(u)(1). In considering the issue of changed circumstances, the district court sat as the trial court. Justice McFadden wrote:

> "Although the resolution of this issue is not explicitly stated in I.R.C.P. 83(u)(2), and is therefore a matter of first impression, we hold that where the district court chooses to handle an appeal as an appellate review and then elects to hear additional evidence on one or more issues, those issues affected by the additional evidence shall be treated as if involving a trial *de novo*." *Koester v. Koester*, 99 Idaho at 656, 586 P.2d at 1372.

In *In re Estate of Stibor*, 96 Idaho 162, 525 P.2d 357 (1974), we again had occasion to comment on the role of a district court in reviewing a decision from the magistrates division. The most noticeable problem in *Stibor* was the magistrate's failure to set forth his opinion in formal findings of fact

and conclusions of law. The absence of the formal findings effectively prevented a meaningful appellate review. Nonetheless, the district judge held that the magistrate's memorandum opinion sufficed as findings of fact and conclusions of law. We reversed, recognizing that had the magistrate explicitly set forth his rationale in findings and conclusions, the district court could have determined whether the findings were sufficiently supported by the evidence and the result in accordance with appropriate principles of law. We went on to note that, with proper findings of fact, "the district court could have properly determined whether this was such a case as should have been tried *de novo* before the district court. I.C. § 1–2213." *In re Estate of Stibor*, 96 Idaho at 164, 525 P.2d at 359. We concluded:

> "For the foregoing reasons the order of the district court affirming the order of the magistrate is reversed and the cause is remanded to the district court with directions to review the record to determine whether this will contest should be tried *de novo* in the district court (I.C. § 1–2213[2]), or whether it should be remanded to the magistrate . . . ." *Id.* at 165, 525 P.2d at 360.

The above cases demonstrate that the district court, having undertaken the task of conducting an appellate review, is *not* as a result precluded from conducting a trial *de novo*. The reasoning behind this proposition is clear: when circumstances prevent a decisive, complete, or meaningful appellate review, it may be advisable for the district court to augment the trial record or create a new record in order to completely resolve the controversy. This occurs "[w]here the trial court's findings of fact are confused or in conflict, or where findings on a particular issue are lacking, and resort to the record does not show clearly what findings are correct . . ." *Hawkins v. Hawkins*, 99 Idaho at 789, 589 P.2d at 536. In *Koester*, it was the presence of changed circumstances during the pendency of the appeal that required a trial *de novo* on some of the issues. In *Stibor*, it

was the magistrate's failure to issue explicit findings which required that the district court either try the case de novo or remand for a new trial before the magistrate.

In view of the thrust of these cases, the issue in the instant case is whether, *under these circumstances*, the district judge was justified in ordering a trial *de novo* due to his determination that he was unable to conduct a thorough and meaningful appellate review of the magistrate's decision because of the trial court's impermissible delegation of its factfinding duty. In *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977), we remarked that the inherent difficulties in reviewing a trial court's factual findings are compounded immeasurably in those circumstances where the trial court merely adopts the proposed findings of the prevailing party. In *Matheson v. Harris*, 98 Idaho 758, 572 P.2d 861 (1977), we iterated our strong admonition against such a practice, observing that these findings "won't be worth the paper they are written on as far as assisting the court of appeals in determining why the judge decided the case." *Id.* at 762, 572 P.2d at 865.

In the case at bar, the magistrate's memorandum opinion was conclusory and failed to set forth the rationale underlying his decision. In reviewing the magistrate's decision, the district judge remarked that he was "without benefit of the rationale and reasoning of the trial court per se whereby it determined the nature of the property to be community." The district judge went on to state that the magistrate's delegation of the factfinding function to counsel was in contravention of our *Compton* admonition. The district judge stated:

"As a result, the formal findings and conclusions entered by the court reflect the position of the respondent at trial, in the first instance, not that of the trial court. If on appeal this court were merely to review the record to determine if the entered findings were supported by the evidence, the district court would consequentially be put into a position of joining with the magistrate and ignoring the directive of the Supreme Court in *Comp-*

*ton v. Gilmore*, thereby fostering utilization of a denounced procedure.

"This Court feels that a more appropriate avenue is available for resolving the issues apparently raised on appeal. . .

"Ordinarily, on appeal, the reviewing court will not disturb the findings of the trial court when they are supported by substantial, competent albeit conflicting evidence.

"This of course presumes that the trial court properly entered findings of fact and conclusions of law." (Citations omitted.)

■ The district court's concern was evident. The circumstances indicated that the court would be effectively precluded from evaluating the decision-making process of the court below. Admittedly, the district court went on to conduct an appellate review, eventually concluding that the magistrate's disposition of the case was in error as "not being supported by substantial evidence and not in conformity with the applicable law." However, we must view this component of the district court's decision along with that part of the opinion which dealt with the *Compton* defect. In view of the difficulty inherent in reviewing the unarticulated reasoning of the magistrate, it was not error for the district court to conclude that "[u]nder the circumstances, and in the interests of justice," a trial *de novo* should be ordered.

Appellant, citing I.A.R. 11(a)(1), insists that this order is appealable because the district court "reversed" the magistrate. We disagree. Rule 11 provides in pertinent part:

"RULE 11. APPEALABLE JUDGMENTS AND ORDERS.—An appeal as a matter of right may be taken to the Supreme Court from the following judgments and orders:

(a) Civil Actions. From the following judgments and orders of a district court in a civil action:

"(1) Final judgments and decrees including decisions by the district court dismissing, affirming, or reversing or remanding an appeal.

. . . ."

■ "Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title." *Idah-Best, Inc. v. First Security Bank of Idaho*, 99 Idaho 517, 519, 584 P.2d 1242, 1244 (1978), *quoting Howell v. Reimann*, 77 Idaho 84, 87, 288 P.2d 649, 651 (1955). Notwithstanding the district court's terminology, the effect of its decision is clear. The district court was to retain jurisdiction and conduct a trial *de novo* to finally settle a controversy which, on the state of the record and in view of the nature of the findings of the court below, was not susceptible of final resolution. The order for a trial *de novo*, which the district court was empowered to enter, precludes the decision from being appealable; the "reversal" of the magistrate does not render the decision appealable. In a sense, every order for a trial *de novo* "reverses" the decision of the court below. It not only "reverses" the lower decision, but it legally wipes it off the judicial record. Therefore, the paramount order entered was the order for a trial *de novo*, which is not an appealable order. I.A.R. 11.

For the above reasons, this appeal is dismissed. Costs are awarded to respondent. No attorney fees.

DONALDSON, C. J., and SHEPARD and McFADDEN, JJ., concur.

McFADDEN, Justice, specially concurring.

I join the majority's holding that the district court's decision to order a trial de novo is not appealable before this court. I reach this conclusion notwithstanding the fact that the district court's order is encumbered with language which suggests that the court was conducting an appellate review. The last two paragraphs of the order read as follows:

"After reviewing the entire record in this matter, and the applicable law, it appears that determinations of the magistrate regarding the nature of the property in question, and the resultant disposition thereof by that court, was in error

as not being supported by substantial evidence and not in conformity with applicable law. The magistrates [sic] decision is therefore reversed.

Under the circumstances, and in the interest of justice, this Court will exercise its statutory discretion and grant a trial de novo in district court. I.C. § 1–2213.

In my view, this evident confusion of the district court concerning the precise nature of its review cannot change the fact that its ultimate act was to order a trial de novo. The effect of such an act, as the majority notes, is to wipe the slate clean, so that the trial in district court commences as if initiated there. *See* I.R.C.P. 83(u)(2):

"(2) Upon an appeal from the magistrates division of the district court . . . involving a trial de novo . . . the district court shall render a decision in the action as a trial court *as though the matter was initially brought in the district court.* (Emphasis added.)

The district court's "reversal" is thus mere surplusage; and on such a state of the record there exists no final judgment from which appeal may be taken to this court. I.A.R. 11.

Even were such an appeal permitted by our rules, entertaining it would almost always be disadvantageous. The decision to grant a trial de novo indicates that the district court found the existing record inconclusive in one respect or another; conducting the trial de novo affords the district court the opportunity to create a record of substance, and measurably increases the chance that we will be presented with a meaningful record on appeal should the trial de novo not resolve the issues to the parties' satisfaction.

The current version of I.R.C.P. 83(j), effective May 1, 1979, and not in effect at the time the appeal to the district court was taken in this case, goes a long way toward preventing the sort of confusion generated by the district court's order in this case. This rule requires the district court to decide whether to conduct an appellate review or to grant a trial de novo, to make this

decision within 21 days of the filing of the notice of appeal, and to enter an order specifically setting out the decision.

I assume that the new I.R.C.P. 83(j) would not remove the discretion of the district court to proceed with an appellate review, and upon finding the record incomplete or confused, to order a trial de novo. *E. g., Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (1978). But the drafters apparently recognized the difficulties which confusion on this issue can generate, and the new rule encourages a clear and early statement of the type of review undertaken by the district court.

BISTLINE, Justice, dissenting.

Appellant's and respondent's briefs were filed by August 9, 1978. These briefs represent an outlay of time and effort which costwise to clients would have to be in the neighborhood of not less than $4,000. Appellant's requested relief was that we reverse the appellate decision of the district court and reinstate the prior determination of the magistrate. Appellant argues in its brief that the magistrate's findings and conclusions are supported, hence binding on the appellate district court, and the magistrate should have been affirmed. Appellant points to alleged error by the district court in its characterization of real property which had been purchased with community funds. Respondent's brief argues those issues, and raises no additional issue. Respondent made no suggestion that the district court's appellate determination was not appealable. The parties waited out their turn for oral argument, and were notified on December 7, 1979, that they would be heard on January 8, 1980, twenty months after the filing of the appeal.

Oral argument was heard as scheduled. However, after it was scheduled, three members of the Court, *sua sponte,* raised a question of the appealability of the district court decision to this Court. The parties were requested to invest additional time and expense into submitting briefs on that question—never raised by them as an issue. I voted against the Court's raising the issue

on the basis that we did not lack jurisdiction to hear the appeal. Nothing which I see in the Court's opinion convinces me in the least that the appeal should be dismissed.

On the contrary, the discussion of the applicable rules contained in the briefs of both parties buttress my own earlier conclusion, which I thought rather basic and readily reached.

The Court's opinion derails in observing "that if the district court had only ordered a trial *de novo,* such an order would not have been appealable," and from there invents "the problem in this case that the district court judge also undertook an appellate review." The Court's opinion has gotten the cart ahead of the horse. The district court judge made an appellate review, rendered an appellate opinion, and reversed the decision of the magistrate. This is not a situation where the district court, instead of an appellate review, opted instead to enter upon a trial *de novo.*

The appellate review it conducted was in all respects the same as the appellate review this Court makes of district court decisions. Just like this Court, the district court, on review of the record, and on its view of the proceeding below, will affirm, or affirm as modified, or reverse and remand. I.C. § 1–2213 so provides. If the appellate district court does not direct a dismissal on the remand, it will order a new trial, or at least further proceedings consonant with the opinion. As is the procedure in this Court, where it reverses, it will direct the ensuing procedure.

Here, after making its appellate review, the district court did reverse, and did order a new trial. This is entirely distinct from the *de novo* new trial which the district court might opt to grant when the appeal from magistrate first reaches him. At that point in time, according to this Court's rules—not the statute—the district court can decline to make an appellate review, and can choose to set the case for a trial *de novo* in district court.

The problem perplexing a majority of the Court, entirely of its own making, seems to be in the fact that the district court designated itself as the court before whom the new trial would take place. For my part I am entirely at a loss to see how the district judge's appellate decision became not appealable to this Court because in reversing (which would be appealable) he added that there would be a new trial (which doesn't in the least alter the main premise of a reversal—something has to be directed), and added that the new trial ordered would be in district court (said by the majority to make the decision reversing not appealable).

That a district court (district judge) in Idaho has jurisdiction and authority to try any divorce action filed in district court is beyond dispute. Magistrates do have the authority to try divorce actions, where such jurisdiction has been conferred upon them, but that does not abridge the concurrent jurisdiction of the district courts. Here the district court, after appellate review and after reaching its decision to reverse, ruled:

> "Under the circumstances, and in the interest of justice, this Court will exercise its *statutory* discretion and grant a trial de novo in district court."

The words *de novo* are mere surplusage, as any new trial is a trial *de novo*—but the new trial here clearly followed appellate reversal, and, as above pointed out, was not at all the trial *de novo* contemplated where the district court initially must decide whether to either retry the case or conduct an appellate review instead. The words "and in the interest of justice" clearly demonstrate that court's view that these litigants should not be put to a second trial in magistrate court, with perhaps yet another appeal, and perhaps another reversal, and another appeal—*ad infinitum*. To his phrase, I would add, and "in the interests of judicial administration and dwindling judicial resources." That which I wrote in *Revello v. Revello,* 100 Idaho 829, 606 P.2d 933 (1979), has even stronger application here where there is not the confusion of a supposed collateral attack in a district court on a magistrate's order entered in that same district court. On reflection, and with the benefit of the additional briefing in *Revello* which we received from both parties on the petition for rehearing (denied without opinion), and accepting the Court's opinion in that case as an illustration of where we are after ten years of judicial reform, I am brought to wonder if the time has not come to make a considered reevaluation. Be that as it may, I cannot help but worry that the bench and bar alike will find the Court's interpretation of its own rules and the dismissal of this appeal more objectionable and unwarranted than the other *sua sponte* dismissal of the *Revello* appeal.

In essence, what the Court holds today—totally unsubstantiated on a well documented record—is that the district judge simply did not know what he was doing. The district judge is being told that he did not make an appellate review,[1] but opted in-

---

1. In fairness to the district judge and those who would prefer to know whether in fact the district judge did review the magistrate's decision, I deem it mete to set forth the pertinent portion of his appellate decision:

> "Here the conclusion regarding the subject property, reached by the magistrate in his memorandum decision, is not supported by substantial evidence.

> "It is clear that the status of property acquired during marriage is determined by the source of the funds with which it is purchased. *Cargill v. Hancock*, 92 Idaho 460, 444 P.2d 421, *Stanger v. Stanger*, 98 Idaho 725, 571 P.2d 1126. In *Cargill* both the husband and wife had signed a contract of purchase for real property but the property was nevertheless held to be the husband's separate property since all payments had been made out of his separate funds. In *Stanger* only the husband was named as grantee in a deed, yet the property was held to be community to the extent that the payments therefor were made with community funds. It appears therefore that it is not controlling in whose name or names a deed, or contract of purchase, appears; but rather the actual nature of the property depends upon the character of the funds used to pay for the property.

> "Here, the appellant testified that he made all of the payments on the real property in question. (Transcript, page 12, line 13 through page 13, line 7) He also testified that the source of the payments he made was from his savings account and his social security pension. (Transcript, page 13 lines 15

stead for a trial *de novo*, which he must now conduct, after which any dissatisfied party may then appeal to this Court.

Back of it all, the entire futility of the Court's opinion is found in its play on the language the district court used in reversing. The Court seizes upon the words "trial *de novo*" as grounds for nullifying the appellate review *and reversal* which the district court made. As appellant points out, once the magistrate decision was reversed, ergo, there was no magistrate decision. The appellant was clearly entitled to come to this Court, as it did, and contend here, as it has, that the district court's appellate decision to reverse was in error. If appellant prevails in this Court, the decision of the magistrate will be reinstated. In that event, there will not be any second trial in any court. So simple it is, and the Court's big problem, wholly self-manufactured, evaporates. If this Court affirms the district court's reversal of the magistrate, then and then only it will be time for the parties to consider whether or not either of them will make some appropriate challenge of a district court's (district judge's) jurisdiction to try a divorce action. And, in that event the attorneys involved will necessarily consider the advisability of informing their clients that it is more desirable to go back to magistrate court, facing two appeals, than it is to be given a district court determination with only one appeal.

through 20; page 32, line 17 through page 33, line 15) He also testified that the source of his savings account was the proceeds of a sale of a wheel alignment business owned by him, in February, 1972. (Transcript, page 15 lines 7 through 22; page 4 lines 8 through 25; page 5, lines 1 through 21). None of this testimony was disputed by the respondent. The Appellant acquired his one-half interest in the business at the time of the first divorce in February, 1972. When Appellant and Respondent married in June of 1972, the one-half interest remained his separate property. I.C. § 32–903. And when the business was finally sold in February, 1973, Appellant's one-half share of the proceeds became his separate property under the tracing doctrine. *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685. Since the savings came from the sale proceeds, the savings were also Appellant's separate property and it follows that the real property in question is Appellant's separate property at least to the extent that the payments made on the house were made from Appellant's savings account.

"The character of the Social Security pension is a more ticklish question. At first blush, the doctrine of *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53, would appear to require that at least a portion of the pension be community property since the Appellant worked and presumably paid Social Security taxes for the first eight months of the marriage. As in *Ramsey*, however, the question must be asked whether it would contravene Federal law for this court to so rule. It is clear from the Social Security Act that Congress has given careful consideration to the special pension problems a divorced wife faces. For example, Congress has explicitly extended old-age benefits to elderly women who are divorced after more than 20 years of marriage and are unmarried at the time they apply for benefits. 42 U.S.C.A. §§ 402(b), 416(d). More importantly, Congress has provided that the payment of benefits to a divorced wife should *not reduce* the husband's benefits, which are to remain the same regardless of whether the divorced wife receives benefits or not. 42 U.S.C.A. § 403(a)(3). Yet a reduction in the husband's benefits is exactly what would result if this court were to hold that the Appellant's Social Security pension is community property. The only case which has addressed the question of this potential conflict between the law of community property and the Social Security Act is the case of *In re Marriage of Nizenkoff*, 65 Cal.App.3d 136, 135 Cal.Rptr. 189 (1977). In a well-written and persuasive opinion, the California Court of Appeal held that it would be unconstitutional to treat a Social Security pension as community property. It follows that in the case at bar, the Appellant's Social Security pension is his separate property.

"Since both the Appellant's savings and his pension were his separate property, and real property in question was paid for entirely by his separate property, this property itself, consequently, would also be his separate property. *Cargill v. Hancock*, 92 Idaho 460, 444 P.2d 421; *Stanger v. Stanger*, 98 Idaho 725, 571 P.2d 1126.

"After reviewing the entire record in this matter, and the applicable law, it appears that determinations of the magistrate regarding the nature of the property in question, and the resultant disposition thereof by that court, was in error as not being supported by substantial evidence and not in conformity with applicable law. The magistrate's decision is therefore reversed.

"Under the circumstances, and in the interest of justice, this Court will exercise its *statutory discretion and grant a trial de novo* in district court. I.C. 1–2213."

I see no merit whatever to the Court's facile reasoning that the judge of the district court did not make an appellate review. And, as plain as the proverbial "nose on Dooley's face," the magistrate's decision was reversed, and a new trial ordered. Even in the absence of the concluding language of I.C. § 1–2213, a judge of a district court has jurisdiction to try a divorce action. But the language of the statute precludes all argument.

The Idaho Constitution, Art. 5, § 13, has placed the power in the legislature to "provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all of the courts below the Supreme Court . . . ." Acting under the mandate of that article, the legislature provided that appellate review of magistrate decisions would be by district court judges, who would review the appeal record and affirm, affirm as modified, reverse, or reverse and remand for a new trial, or reverse and remand with special instructions. I.C. § 1–2213.

In obvious recognition that a district court judge's jurisdiction is equal to and greater than the jurisdiction of a magistrate, the legislature further provided that the district court on reversal "may direct that the case be tried de novo before him." I.C. § 1–2213. In 1976 the Court enacted a rule, 83(u), which purports to add to the statute a provision that appeals to district court judges would be initially placed into two categories: those where the district judge was impliedly[2] required to make an *ex parte* determination that he would *not* make the appellate review mandated by the statute (Rule 83(u)(2) "involving a trial de novo"), or he would do so (Rule 83(u)(1), "not involving a trial de novo").

What good has been achieved by the promulgation of the rules is hard to visualize.

For my part, I am simply unable to understand what the Court hoped to gain—other than confusion—in its attempt to improve upon the statute by which the legislature properly outlined an efficient method of appeals from magistrate courts. Lawyer magistrates are regularly hearing divorce actions throughout the state. Lawyer magistrates are regularly being appointed to district judgeships, and many who are not moving up nevertheless have the qualifications to do so, and are being nominated for judgeships on a regular basis. At one time the entire bar of the two northernmost counties by resolution called for the abolition of the caste system of district judges and lawyer magistrates—in recognition of their equal qualifications and closing areas of jurisdiction.

I am unable to see why an appellate review which a district judge makes of a magistrate decision should differ from that set by legislative action. But more importantly, I see a district judge here following the statute explicitly, and where he did not make the election to initially grant a new trial, under the rules of this Court, I am distraught at today's turn of events.

In closing mention should also be made that there was no call for the Court's indepth discussion of Judge Newhouse's utilization of counsel's services in preparing findings and conclusions to be entered—if approved—in magistrate court. It has been well stated that the better practice is for a trial court to make its own, obtaining submitted findings from both counsel, but it has also been stated that counsel-prepared findings, once approved and signed, are the findings of the court. *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977). Moreover, the opinion in that case, while it was handed down in late February of 1977, was not published and distributed in Volume 98 of the Idaho Reports until about the time that Judge Newhouse used counsel's services for the drafting of findings.

That, of course, is a small matter as compared to the action the Court takes in turning down the appeal from a district court appellate decision which is clearly appealable, but held not to be on the grounds that

---

2. In 1979, by the provisions of a new Rule 83(j), the district court judge was expressly allowed 21 days to make this decision, and enter and serve an appropriate order.

the district judge, acting within his jurisdiction and the guidance of the statute—and in the interests of conserving judicial resources and with an eye to the rights of litigants, stated that the new trial would be in district court. The sublime irony of it all is that the district court appellate opinion held only that the case would not be relegated back down to magistrate court, from which depth it might work its way up again, and, while the case languished in this Court for almost two years, the magistrate who first decided the case was elevated to the district court bench, thus providing a choice of not just one, but two district judges, who already had considerable time invested in getting a grasp on the basis of the controversy. Then, too, as mentioned above, there is always the possibility that this Court, if it deigned to hear the appeal, might find error on the part of the district judge in reversing the magistrate decision, and then there wouldn't be any new trial at all!