671 P.2d 1041

**Ethel J. NELSON, Plaintiff-Appellant,**

v.

**PROPERTY MANAGEMENT SERVICES,
Defendant-Respondent.**

No. 14071.

Supreme Court of Idaho.

Feb. 23, 1983.

Charles F. Cole, Boise, for plaintiff-appellant.

Michael G. Morfitt, of Reid and Morfitt, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from an order of the district court vacating and setting aside a default judgment entered in the small claims division of the magistrate court. We affirm the order of the district court.

Plaintiff-appellant Nelson filed a complaint in small claims court against Property Management Services, Inc., her former employer, for $444 allegedly expended by

her on behalf of her employer. Service was perfected on PMSI and trial was set some 45 days later on a Monday at 9:00 a.m. PMSI failed to appear at the time for trial and did not appear until 12:30–1:00 p.m. of that same date. In the interim a default judgment had been granted to Nelson.

PMSI advances the following reason for its failure to appear at the 9:00 a.m. trial time. PMSI's manager, who was a necessary witness at the trial, was required to fly to Boise from Portland, Oregon, and the airline flight from Portland would not arrive in Boise until 10:35 a.m. Hence, the PMSI manager called PMSI's local attorney and requested that the attorney secure a continuance of the trial time, following which the attorney contacted PMSI's manager and indicated that the trial time had been moved to 1:00 p.m. in the afternoon.

PMSI moved to set aside the default judgment and following a hearing thereon, the magistrate judge denied such motion, stating that although PMSI was properly served process, its attorney neglected to inform PMSI of the time of trial and hence the default was not entered as a result of excusable neglect. Appeal from the denial of that motion was taken to the district court. On such appeal, evidently no transcript of the hearing before the magistrate court was available. The district court heard the matter de novo and testimony was taken thereon. A transcript of the district court hearing is a part of the record here. The district court, in rendering his decision, indicated that if possible, cases should be heard on the merits rather than by default and that all presumptions are in favor of setting aside a default if there is good reason to do so. It is apparent in the district court's decision that he believed that there was a meritorious defense to the action and that there existed a justifiable excuse for the failure of PMSI to appear. The district court then remanded the cause for hearing upon the merits in the small claims division of the magistrate court.

■ On appeal here, Nelson asserts that PMSI's appeal of the order of the magistrate court denying PMSI's motion to set aside the default judgment was improper and beyond the jurisdiction of the district court, since I.R.C.P. 81(k) states: "[A]ny party who defaults or does not appear at the small claim proceeding shall have no right to appeal the judgment in the small claim proceeding to the district court." It is argued that permitting an appeal from a denial of a motion to set aside a default judgment entered in the small claims court is merely a back door method of rendering inoperable I.R.C.P. 81(k). We do not agree. Assuming that I.R.C.P. 81(k) would withstand a due process challenge, we nevertheless hold that it does not bar an appeal in the instant situation. To adopt the position advanced by Nelson would insulate any decision of a magistrate sitting in the small claims court from review, regardless of lack of jurisdiction or of how outrageous or erroneous that decision might be.

■ Nelson next asserts that the district court erred in holding a de novo hearing and taking additional testimony as to the existence of a meritorious defense and as to whether the conduct of PMSI in failing to appear at the trial was the result of excusable neglect. As above noted, a hearing was held before the magistrate on the motion to set aside the default, but the record of that hearing was evidently not before the district court. The magistrate's decision is largely conclusory. Hence we cannot determine whether the evidence sustains the magistrate's conclusion that PMSI's failure to appear at trial was not the result of excusable neglect. We affirm the action of the district court in holding a de novo hearing. *See Winn v. Winn,* 101 Idaho 270, 611 P.2d 1055 (1980).

■ Nelson lastly argues that the district court abused its discretion in setting aside the default judgment of the magistrate. We disagree. It is clear that a motion to set aside a default judgment is addressed to the sound legal discretion of the court and will not be reversed unless an abuse of discretion clearly appears. *Hearst Corporation v. Keller,* 100 Idaho 10, 592 P.2d 66 (1979); *Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974). Our review of the

record indicates sufficient evidence was taken before the district court to conclude that PMSI had a meritorious defense to the action and that its failure to appear was a result of excusable neglect.

█ Nelson relies heavily upon *Hearst Corporation v. Keller, supra.* Insofar as that decision is pertinent here, it provides only that a mistake sufficient to warrant setting aside a default judgment must be of fact and not of law. As pointed out in *Hearst,* the party who there sought to be excused from a default judgment offered no sufficient factual explanation as to the failure to appear, but only argued that he was unaware of the law requiring an answer and counterclaim to preclude the entry of a default judgment. It was there held that such an excuse was a mistake of law and not of fact and not sufficient to set aside the default. Here PMSI contended that its failure to appear was due to a mistake in fact, *i.e.,* its attorney agent had advised it that the trial was postponed until 1:00 p.m. of the same day and it appeared at said time. *Hearst* is thus inapposite to the instant case.[1]

The order of the district judge setting aside the default judgment is affirmed. No costs allowed. No attorney's fees on appeal.

HUNTLEY, J., McQUADE and DUNLAP, JJ. Pro Tem., concur.

BISTLINE, Justice, dissenting.

It is always scintillating to participate in questions which revolve around the Court's own rules. Today the Court "assumes" the due process constitutionality of I.R.C.P. 81(k), suggesting one would suppose that here it is not necessary to void it in order to guarantee the corporation the relief it gained from the appellate district judge. In that respect—the corporation prevailing—the case is not unlike *Sherwood & Roberts, Inc. v. Riplinger,* 103 Idaho 535,

650 P.2d 677 (1982), where the corporation also prevailed against the individual defendant. That case was also a default proposition, although not originating in the magistrate court.

I might be persuaded to join the Court's opinion today if somewhere in it a distinction was shown between the *Riplinger* default—which was not set aside—and the default in this case. Before leaning too far in that direction, however, it would also have to be shown how the Court's opinion today squares with our unanimous opinion in *Hearst Corporation v. Keller,* 100 Idaho 10, 592 P.2d 66 (1979), where it was stated:

"In fact no answer to the complaint was filed nor was any counterclaim. Defendant never denied owing the money plaintiff claimed. At most, defendant's affidavit described a possible damage claim arising from a breach of contract by plaintiff and interference by plaintiff with defendant's attempts to obtain a business loan. The allegations were all conclusions and set forth no detailed facts. It cannot be determined whether the alleged breach of contract would be a compulsory or permissive counterclaim.

"When moving to set aside a default judgment, the moving party must not only meet the requirements of I.R.C.P. 60(b) but must also plead facts which, if established, would constitute a defense to the action. It would be an idle exercise for the court to set aside a default if there is in fact no real justiciable controversy. The defense matters must be detailed. See *Thomas v. Stevens, supra* [78 Idaho 266, 300 P.2d 811 (1956)] and cases cited therein.

"Once a default has been entered the pleading of defensive matter must go beyond the mere notice requirements that would be sufficient if pled before default. Factual details must be pled with particularity."

---

1. Nelson contends on appeal to this Court that the district court further abused its discretion in failing to consider that one of Nelson's witnesses had moved from Idaho in the interim and would be unavailable for retrial. That contention is sustained only by Nelson's ex parte unsworn letter to the district judge. No sworn testimony of that circumstance was presented by Nelson at the hearing before the district judge, albeit she had the opportunity to do so.

100 Idaho at 12, 592 P.2d at 68.

The majority opinion inadvertently misses the main point of *Hearst* that "defense matters must be detailed," and "must go beyond the mere notice requirements that would be sufficient if pled before default." Although the majority blithely declares that its "review of the record indicates sufficient evidence was taken before the district court to conclude that PMSI had a meritorious defense . . . ," counsel for Mrs. Nelson would undoubtedly appreciate being directed to that evidence. The magistrate who denied the motion to vacate the default for certain is aware that no such supporting documentation was placed before him. If it was, I regret my inability to find it.

One main criticism of the majority's disposition is its willingness, at least in this case, to foster the notion of a magistrate deciding an issue on one record, and in turn the district judge, sitting as an appellate court, deciding that same issue on another and different record. Responsive to such criticism the majority explains that "no transcript of the hearing before the magistrate court was available." Now, just whose fault is that? Certainly not Mrs. Nelson's. She is not the one who appealed to the district judge.

It was encumbent upon PMSI to comply with the *Hearst* requirements. But even before *Hearst*, it was forever the case law in Idaho that a motion to set aside a default of a necessity had to be supported by an affidavit which satisfactorily excused the default, and, of no less importance, an affidavit of merits which disclosed facts showing a defense to the complaint upon which the default was entered. (It was acceptable to tender a verified answer which also in sufficient detail set forth the facts allegedly giving rise to the claimed defense.) Had PMSI initially complied with *Hearst* and its predecessors, two things would have resulted: (1) It might have convinced the magistrate to set aside the default, and (2) it would have made up a proper and satisfactory record upon which it could have appealed. All that the Court accomplishes this day is not just to sanction, but, reward

noncompliance with time-honored case precedents. At the same time, it places its "Good Housekeeping stamp of approval" on the extremely bad practice of hearing and determining motions to set aside defaults on oral testimony. Such matters are properly resolved as questions of law raised by the affidavit of merits, and questions of fact to be decided on the showing made by the affidavit which seeks to excuse allowing the matter to go by default.

Mr. Skalak, PMSI's only witness in the hearing conducted before Judge Smith, had the temerity to testify that service was made "about five or six days before the hearing . . . ." However, the Court's opinion correctly concedes that PMSI had forty-five days after service in which to arrange for its appearance at trial. Forty-five days is more than the allotted time which this Court grants litigants in which to make arrangements to appeal from district court. My ability to perceive that which is written tells me that Mr. Skalak was on thin ice in testifying before Judge Smith that he was served only five or six days before the hearing. Mr. Skalak's feeble attempt to explain the whole thing away is incomprehensible:

"Q. Upon receipt of that notice, what did you do?

"A. Well, we kind of had a problem on—the area manager at the time, was Al Nimo (phonetic) who's out of Vancouver, Washington, and the time schedule— the time frame that that was set up, was going to be impossible for him to meet. So we'd asked to have. . . .

"Q. Why was that impossible for him to meet?

"A. Well, the flight from Portland does not arrive down here until 10:35, I believe it is, and he could not make that by leaving even early, because he had just come back from Yakima on a Saturday and he couldn't get plane connections to get down here in time for the 9:00 hearing.

"Q. And what was his purpose for coming down?

"A. He is more familiar with the area, because it was actually the latter part of '79, the first part of '80, so he is our property manager, so in turn, he was coming down for the hearing.

"Q. I see. So, as a result of that, what did you do?

"A. Well, I'd called to see if we could get—at the same time, we had two hearings; we had a labor board hearing on the same case. And I'd called the attorney's office, and we would—we'd wanted the hearing set up to 1:00 in the afternoon, this way he'd be down here at 10:30, and we could get our papers together and be down there at 1:00, which we did show up at 1:00. And ..."

Tr., pp. 3–4.

Service of papers five or six days before the scheduled hearing might cause problems. But such was not the case, notwithstanding which Mr. Skalak audaciously testified that it was on receipt of service that the determination was made that a Mr. Nimo would appear for PMSI.

Other testimony by Mr. Skalak is strongly suggestive that nothing at all was done after service was made and that only at the last minute did PMSI decide who would appear for it as scheduled.

"Q. Now, Mr. Skalak, [at] the risk of being repetitious, would you tell the Court one more time, in your own words, why you thought the hearing was at 1:00?

. . . .

"A. OK, well, basically like I said before, we got the papers, which I believe had come about five or six days before the hearing, and I noticed right at the time it was set up for 9:00 in the morning, which with Al having to come down from Portland, with the plane landing at 10:30 in the morning, we just weren't going to make it. So I called and asked if we could get it set up to 1:00. And we got an attor—I got a . . . .

"THE COURT: Wait a minute.

"A. ... message back ...

"THE COURT: Who did you call?

"A. I called Jim Reid, the attorney.

"THE COURT: Called your attorney, OK.

"A. Right. And they said—he had stated that it would be changed. And then at the same time, about two days later, I had called down, talked to the secretary, and she said she'd get back to me. I was out of the office, she had left word with one of my office girls, that it had been changed to 1:00. And we were basically, in the conversation, talking about two different hearings. It was just a misfortune, it was a misunderstanding.

"Q. Now, what was the other hearing?

"A. It was for the labor board on the same—same thing with Mrs. Nelson. Which I believe that date got changed, and the 9:00 a.m. one didn't get changed. Or maybe—it either got changed—in other words, we were under the impression that the Monday morning was changed to 1:00 a.m.—or, 1:00 p.m., and that's when we showed up."

Tr., pp. 7–8.

A genuine concern here is PMSI's disregard for our Idaho law which precludes attorneys from being involved in small claims actions:

"No attorney-at-law or any other person than the plaintiff and defendant shall concern himself or in any manner interfere with the prosecution or defense of such litigation in said department, nor shall it be necessary to summon witnesses, but the plaintiff and defendant in any claim shall have the privilege of offering evidence in their behalf themselves and witnesses appearing at such hearing, and being duly sworn as in other cases, and the magistrate shall render and enter judgment as in other cases."

I.C. § 1–2308.

Notwithstanding such strong language, it is obvious that PMSI through counsel intended to unilaterally reschedule the trial setting:

"Q. Now, what attorney was this you contacted?

"A. Jim Reid.

"Q. And what's Mr. Reid's capacity?

"A. The company's attorney.

"Q. OK, what did you discuss with Mr. Reid?

"A. Oh, we discussed that hearing, plus the labor board hearing. And it was—evidently it was misunderstood that I was trying to get the Monday morning hearing, put up till 1:00, instead of the Wednesday morning hearing, 'cause as it turned out, the wrong one got changed. When we showed up at 1:00, they had already told us that it—it had not been changed.

"Q. Now, where did you show up at 1:00?

"A. We went across the street to the building, I believe right across the street here, and want—just wanted to make sure that it had been—we went over, I believe it was about 12:30, quarter to 1:00, to make sure that it had been changed and what room, and—in other words, just checkin', and they had told us it had already been at 9:00, that it was not changed.

"Q. Now, which day was this that you appeared?

"A. That was on Monday afternoon. His plane got down here at 10:35, and we got our papers together and come down to the court area.

"Q. OK, now when did you think this trial was going to be?

"A. At 1:00. Because I'd already called him and told him that it was changed.

"Q. And what made you think that it had been changed to 1:00?

"A. We'd received a call back from . . . . .

"MR. LUDWIGSON: I object. I think the question is calling for hearsay, Your Honor.

"THE COURT: I'm going to let him testify as to what was told to him.

"A. OK, we were called back from—I, personally, was not called, one of my office girls had been called from the attorney's office, and said that it had been moved up to 1:00.

"THE COURT: That really is hearsay, now. The office girl made the statement to him.

"A. Well, they had left me a message.

"MR. LUDWIGSON: I'll make the same objection, and request that that answer be stricken, Your Honor.

"THE COURT: I'll have to sustain the objection."

Tr., pp. 4–6.

What the foregoing illustrates is a large corporate entity engaging counsel to maneuver a small claims court into rescheduling a trial setting—ALL OF WHICH APPEARS TO TAKE PLACE WITHOUT ANY NOTICE WHATEVER TO THE UNCOUNSELED CLAIMANT. This, of course, is an area with which this high court should properly concern itself, but stays strangely silent.

Having broken the rules, and there apparently being a poor line of communication between the corporate entity and its local counsel, in an area restricted as to attorneys, and with some blame inferentially being placed on small claims court personnel, who inferentially are reported as having postponed the trial setting, the corporate entity has the audacity to urge that the breakdown between corporate entity and its counsel is sufficient to excuse its forty-five days of inattention!

And what in the record made up before the district judge shows the carefully detailed facts which the *Hearst* Court declared as prerequisite to setting aside a default, assuming *arguendo* that excusable neglect or inadvertence are made to appear? Only this, and nothing more, and offered by a man who knew so little that he couldn't appear in defense on August 4th without the busy Mr. Nimo:

"Q. Who appeared with you at 1:00?

"A. Al Nimo (phonetic), the property manager.

"Q. Were you prepared to put on a defense at that time?

"A. We were.

"Q. What's the nature of your defense to Mrs. Nelson's claim?

"A. Just the fact of—at that time, of what she was claiming, we've got ... proof that—in other words, our company feels we do not owe her the things that she is claiming, and we've got letters, receipts, and numerous other articles that we were going to use at the hearing, which we still have in our hands.

"Q. Does your company feel any monies are due her at all?

"A. No.

"Q. And what is the reason you feel there's no monies due her?

"A. They had tried—see, the area at that time was new to me, 'cause I just come down from Portland, and the claims that were against the company, as far as petty cash, and things like that, they do have all the records, cancelled checks, and all that, and at one time, there is a letter, which I believe we have, too—a copy of it, that was sent to Mrs. Nelson asking to have all receipts turned over to the company, so if there was any monies of hers spent over and above what a petty cash is allowed, that they would reimburse her. And I believe that was signed by both parties."

Tr., pp. 6–7.

PMSI's moving paper to set aside its default filed in Small Claims Court on September 12, 1980, was based "on the grounds of excusable neglect," and based upon "the affidavit attached hereto and upon the records and files in this proceeding." R., p. 12. No such affidavit is found in the record, and it was apparently forgotten when PMSI took its appeal to the district judge— which was not a poor tactic, because its absence seemed to suggest to the district judge that he hear the motion to vacate as de novo. The magistrate, however, noted in his order the content of the missing affidavit, together with other remarkable information:

"The Affidavit in support of the Motion alleges excuseable neglect in that the Defendant was not aware of the original date. The Affidavit does not disclose why the Defendant was not aware of the trial date. It simply makes the naked allegation that the lack of knowledge was excusable neglect. Based on the Motion and Affidavit this Court granted a hearing on November 3, 1980 to inquire as to why the Defendant concludes its failure to appear at trial was the product of excusable neglect. At that hearing a representative of the Defendant appeared and testified under oath that the case had been turned over to the Defendant's attorney and that, even though the Defendant was properly served with process in the action, the Defendant's attorney forgot to inform the Defendant of the time and date of the trial."

R., p. 13 (emphasis added).

From this, the magistrate concluded swiftly and wisely "that the cause of the Defendant's failure to appear at the trial does not amount to excusable neglect." R., p. 13.

In filing an appeal to the district judge, PMSI did refer to an affidavit, and did attach it, but it is not the affidavit referred to in the motion filed in Small Claims Court. This affidavit is singularly interesting in that it shows further unwarranted attorney representation while the action was still in Small Claims Court:

"III

"That your affiant personally met with Judge Schmidt on the 16th day of September, 1980, who informed your affiant that he would accept a letter from the Defendant outlining the reason for their absence as sufficient justification to set aside the default judgment and hear the matter.

"IV

"That your affiant personally delivered to Judge Schmidt a request by the Defendant outlining their error in missing the trial date and their defense to the claim on September 17, 1980, a copy of which is attached hereto as Exhibit 'A' and included herein as if set forth here in full, and accompanied Judge Schmidt to the Clerk's office where the Judge directed that the default be set aside, a new

trial be scheduled at a later date and the Writ of Execution outstanding be quashed.

"V

"That on or about the 3rd day of November, 1980, the Defendant personally appeared to defend against Plaintiff's claim, whereupon Judge Schmidt refused to hear evidence on behalf of the Defendants and allowed the judgment entered by default to stand.

"VI

"That your affiant verily believes that Defendant has a good and sufficient defense to said claim, and that the error in time of appearance on the scheduled day for hearing was due to the inadvertence, mistake and excusable neglect of the Defendant as allowed by Rule 60(b), Idaho Rules of Civil Procedure.

"DATED This 13th day of November, 1980.

/s/ Michael G. Morfitt
Michael G. Morfitt"

R., pp. 16–17.

The letter which is referred to in the affidavit of PMSI's counsel is attached, and bears out as strongly as such damaging documentary evidence can, that PMSI's attorney indeed had been slipping PMSI letters to the magistrate judge—but not with the professional courtesy of so advising the wholly uncounseled claimant.

If for no other reason than but as a sanction, I would reinstate the decision of the magistrate. However, it is not necessary to so resort, not where there is a failure to comply with the propositions of law reaffirmed in *Hearst*. Excusable neglect was not demonstrated. Worse than that, no affidavit of merits was filed, not in the magistrate court where it should have been, nor in the district court. Testimony should not have been taken in either court, and PMSI failed to comply with *Hearst* requirements no matter how viewed.

The Court short months ago. worked a travesty in its *Riplinger* opinion which appeared to be a hard act to follow. The Court's opinion today fills out the bill.